Westinghouse Electric Corp., Appellant, *v.* Lindley,
Tax Commr., Appellee.
Westinghouse Electric Corp. et al., Appellants, *v.*
Lindley, Tax Commr., Appellee.

(Nos. 78-545 and 78-536—Decided May 16, 1979.)

*Messrs. Brownfield, Kosydar, Bowen, Bally & Sturtz* and *Mr. Robert J. Kosydar*, for appellants.

*Mr. William J. Brown*, attorney general, and *Mr. John C. Duffy, Jr.*, for appellee.

*Per Curiam.*

### I.

The issue presented by the first finding of the board is whether the term "royalties," as used in R. C. 5733.04(I) (2), means gross foreign royalties or net foreign royalty amounts that would be part of federal taxable income after deducting expenses related to the earning of such to arrive at the federal taxable income. The legislative intent surrounding R. C. 5733.04(I)(2) was to exclude corporate foreign royalties from the income allocated for Ohio tax purposes.* In the instant cause, the Tax Commissioner allowed such deduction to the extent such royalties were included in appellant's federal taxable income, the starting point for net income.

The Tax Commissioner determined that only the net amount of foreign royalties should be excluded from appellant's calculation of net income. The Tax Commissioner deleted appellant's commission expenses in connection with earning the royalties which then raised its franchise tax for 1972 and 1973.

R. C. 5733.04(K) states:

---

*Under the "net income method" for computing the value of the issued and outstanding shares of stock of a corporate taxpayer (R. C. 5733.05[B][2]), the "net income" of the corporate taxpayer is allocated or apportioned to Ohio by means of a three-factor formula: property, sales and payroll. The General Assembly has defined "net income," as that term is used in R. C. Chapter 5733, in R. C. 5733.04(I). The definition of "net income" therein contains the following relevant language:

"(I) 'Net income' means the taxpayer's taxable income before operating loss deduction and special deductions, as required to be reported for the taxpayer's taxable year under the Internal Revenue Code, subject to the following adjustments:

"* * *

"(2) Deduct any amount included in net income by application of section 78 or 951 of the Internal Revenue Code, amounts received for royalties, technical or other services derived from sources outside the United States, and dividends received from a subsidiary, associate, or affilitated corporation that neither transacts any substantial portion of its business nor regularly maintains any substantial portion of its assets within the United States."

"Any term used in this chapter has the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required. Any reference in this chapter to the Internal Revenue Code includes other laws of the United States relating to federal income taxes."

The expressions "net royalty" and "gross royalty" do not appear in the Internal Revenue Code and are used only once each in the regulations. The Revised Code does use the expression "gross royalties" one time in R. C. 5701.10(G).

R. C. 5733.04(I)(2), by its terms, allows a taxpayer to deduct amounts received for royalties which are included in net income. It does not allow deduction of gross royalties, but only the amount of royalties included in net income. Since net income equals federal taxable income (before operating loss deduction and special deduction) it includes only net royalties since expenses incurred to generate the royalties have been previously deducted to reach federal taxable income. Therefore, the amount of royalties included in the federal taxable income and, thus, in Ohio net income are net royalty figures.

Appellants contend that the General Assembly specifically used the term "net royalties" in R. C. 5733.051 and, therefore would have done so in R. C. 5733.04(I)(2), if so intended. However, as previously stated, "net income" is based or derived from federal "taxable income." R. C. 5733.051 sets forth methods of allocation. R. C. 5733.04(I) is a definitional statute providing a deduction for a specific reason pursuant to subsection (I)(2). This court finds no conflict. This court finds the legislative intent was to exclude foreign royalties from "net income" to the extent they were included in federal "taxable income" and not to exclude "gross royalties" derived from sources outside the United States containing expenses incurred in earning such royalties. We can not allow appellant's statutory construction which would result in a deduction not expressly provided (*Kroger Co. v. Bowers* [1965],

3 Ohio St. 2d 76; *Beckwith & Assoc.* v. *Kosydar* [1977], 49 Ohio St. 2d 277). In *New Colonial Ice Co.* v. *Helvering* (1934), 292 U. S. 435, the United States Supreme Court, at page 440, stated:

"* * * Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed."

The decision of the Board of Tax Appeals on this issue is reasonable and lawful and is therefore affirmed.

## II.

The issue presented by the second finding of the board concerns appellant's deduction of earned surplus for Ohio Tax purposes under R. C. Chapter 5733.

R. C. 5733.04(I)(5) reads as follows:

"Taxpayers using the installment or completed contract method of accounting, or other acceptable methods of accounting, for federal income tax purposes, for the first taxable year on which the tax provided for in section 5733.-06 of the Revised Code is *computed* on the corporation's net income, shall exclude from net income that amount that originated prior to such first taxable year and that was included as part of surplus at the time of origination, as shown by the books of the corporation." (Emphasis added.)

In the 1972 "tax year," all corporate taxpayers computed their tax liability under R. C. 5733.06 on both the "net income" and "net worth" methods. Tax was "paid" on the method resulting in the greater tax liability. In claiming the adjustment provided for in R. C. 5733.04(I) (5) in 1973, appellant excluded all earned surplus that originated prior to January 1, 1972. In so doing, appellant contended that "computed," as used in R. C. 5733.04(I) (5), meant that "final determination" of tax liability on the "net income" basis. Since appellant's tax liability was found to be higher when calculated on the "net worth" basis for the taxable year 1972, its franchise tax was "finally determined" and thereafter "paid" on that basis. Thus,

appellant argues that its tax liability was not "computed" for the first time on the "net income" basis until the taxable year 1973, even though it was required to calculate its tax on the "net income" as well as "net worth" basis in 1972. The Tax Commissioner held, however, that by making a calculation of its tax liability on the "net income" basis in 1972, appellant "computed" its tax on that basis, and thus, it could exclude only that surplus which originated prior to January 1, 1971.

The Board of Tax Appeals has previously sanctioned the interpretation appellee applied below. In *O. M. Scott & Sons Co.,* v. *Kosydar* (Jan. 16, 1976), 58 B. T. A. Decns., No. 8, the board, at page 16, stated: " 'Computed' does not mean 'paid'. * *.*." Rather, "computed" designates the first year for which the net income basis is used in comparison with the net worth basis to determine tax liability. We agree with this interpretation, being based, as it is, upon plain statutory wording. This court thus concurs in the board's findings. To do otherwise would allow a deduction not expressly provided for. See *Kroger Co,* v. *Bowers, supra.*

### III.

The issue presented by the third finding of the board concerns Ohio's statutory tax apportionment mechanism. Ohio franchise tax law seeks to impose a tax on that portion of a corporation's net income which is allocable to Ohio. Such allocations are accomplished through R. C. 5733.051 and 5733.05(B)(2). R. C. 5733.051 provides for the allocation of seven specific categories, and, by its eighth subsection directs the allocation of all other net income, pursuant to R. C. 5733.05(B)(2).

Westinghouse originally excluded the dividend received from its DISC from its 1973 franchise report, but later, allocated the dividend pursuant to R. C. 5733.051(A)(6), which provides that:

"(A) Net income of a corporation subject to the tax imposed by this chapter shall be allocated and apportioned to this state as follows:

"* * *

"(6) Dividends, which are not otherwise deducted or excluded from net income, shall be apportioned to this state in accordance with the ratio which the value of the physical assets of the payor thereof located in this state bear to the book value of the total physical assets of the payor thereof located everywhere. Dividends received from payors, the location of whose physical assets is not available to the taxpayer, shall be apportioned as provided in subdivision (A) of this division;"

The commissioner and the board rejected this allocation and, instead, relied upon R. C. 5733.051(A)(8) which provides that:

"Any other net income, from sources other than those enumerated in subdivisions (1) to (7), inclusive, of this division, shall be allocated to this state on the basis of the apportionment mechanism provided in division (B) of section 5733.05 of the Revised Code."

Since the DISC had no physical assets, the commisioner reasoned that, under R. C. 5733.051(A)(6), "* * * the location of * * * [the] physical assets * * * [of the DISC] is not available to the taxpayer * * *" and, therefore, dividend income should be allocated pursuant to R. C. 5733.05 (B)(2).

R. C. 5733.051(A)(6) refers to the book value of physical assets of the payor of the dividend and orders the allocation of the dividend paid to the taxpayer according to the ratio of the book value of physical assets of the payor within this state to the total book value of physical assets of the payor wherever located. If the location of the payor's physical assets is unavailable to the taxpayer, the dividends are allocable under subsection (A)(8), which directs the taxpayer to allocate pursuant to R. C. 5733.05 (B)(2).

Westinghouse wishes to utilize the concept of "constructive ownership" to show that its DISC had "physical assets" outside of Ohio. However, the reasoning of the commissioner is logical in view of the plain language of the Revised Code.

Because the DISC lacked physical assets, R. C. 5733.051 (A)(8) directs an allocation on the basis of the apportionment mechanism set forth in R. C. 5733.05(B). Therefore, dividends must be added to net income and allocated on the basis of the three-factor formula since the DISC had no capitalized assets with an ascertainable book value which could be used to allocate dividends per R. C. 5733.051(A)(6). The mere charging of expenses to the DISC by Westinghouse did not capitalize any assets on the book of the DISC which in turn would make R. C. 5733.051(A)(6) operative.

While the purposes and function of an organization such as the DISC may not have been contemplated by the General Assembly at the time of enactment of the various segments of R. C. Chapter 5733, the language therein is clear, and, therefore the determination of the board, based on such language, is neither unreasonable nor unlawful.

The decision of the board is affirmed.

*Decision affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN and SWEENEY, JJ., concur.

HERBERT and WHITESIDE, JJ., concur in part and dissent in part.

HOLMES, J., not participating.

WHITESIDE. J., of the Tenth Appellate District, sitting for LOCHER, J.

WHITESIDE, J., concurring in part and dissenting in part. Although I concur in parts I and III of the opinion, and to that extent in the judgment, I must dissent from part II of the opinion.

R. C. 5733.04(I)(5) permits an exclusion "for the first taxable year on which the tax provided for in section 5733.-06 of the Revised Code is computed on the corporation's net income." The Board of Tax Appeals denied any applica-

tion of this provision except in the year of its enactment, thereby amending and changing the exclusion to one effective only during the first taxable year *ending after the effective date of the Act* irrespective of the method of computation of the tax liability. Under this method some taxpayers received benefit of the exclusion and others, including appellant, did not.

The plain and clear meaning of the exclusion of R. C. 5733.04(I)(5) is that the taxpayer is entitled to the exclusion "for the *first taxable year* on which the *tax is computed*" on the taxpayer's net income. (Emphasis added.) This means the first taxable year on which the taxpayer's *tax liability* is determined by a computation on net income, rather than by a computation on net worth.

In determining tax liability, many computations are required; however, the clear purpose of the statute is to permit the exclusion for the first taxable year that tax liability is determined by a computation upon net income. The Board of Tax Appeals denied appellant an exclusion clearly provided by law and in effect deleted the exclusion provision from the statute for all years subsequent to the year of its adoption regardless of the basis of computation of tax liability.

Therefore, the decision of the Board of Tax Appeals being unlawful in this respect should be modified accordingly.

HERBERT, J., concurs in the foregoing concurring and dissenting opinion.