224

The Timken Company, Appellee, *v.* Edgar L. Lindley, Tax Commissioner, Appellant.

(No. 80-544—Decided December 23, 1980.)

*Messrs. Day, Ketterer, Raley, Wright & Rybolt* and *Mr. John F. Buchman,* for appellee.

*Mr. William J. Brown,* attorney general, and *Ms. Barbara E. Vest,* for appellant.

MOYER, J.   The issue presented by this cause is whether the determination of the Board of Tax Appeals not to exempt for taxation various equipment and costs of appellee's new modified boilers was reasonable and lawful.

R. C. 5709.20(B) defines an "air pollution control facility" as: "***any property designed, constructed, or installed for the primary purpose of eliminating or reducing the emission of, or ground level concentration of, air contaminants which

renders air harmful or inimical to the public health or to property within this state."

Appellee filed its application for an air pollution control certificate pursuant to R. C. 5709.21 which states, in pertinent part, that such a certificate shall issue "[i]f the commissioner, after obtaining the opinion of the director of environmental protection, finds that the proposed facility was designed primarily for the control of air or noise pollution***." This section further states that "[s]aid certificate shall permit tax exemption***only for that portion of such pollution control facility or that part used exclusively for air or noise pollution control."

The holder of an air pollution control certificate receives the benefit of the tax exemption set forth in R. C. 5709.25, which applies to most Ohio taxes.

We have consistently held that whereas laws relating to exemption from taxation *pro tanto* violate the constitutional requirement of tax uniformity, such laws must be construed most strongly against the exemption. See *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407; *Transue & Williams, Inc.,* v. *Lindley* (1978), 54 Ohio St. 2d 351.

Appellee argues that the statutes that create the exemption for air pollution equipment provide such an exemption where the taxpayer's purpose in the installation of new equipment is solely to comply with air pollution standards. The record supports, and it is virtually undisputed, that appellee would not have installed the equipment in question if it were not required to comply with ambient air quality and sulphur dioxide emission standards. Appellee chose the installation of new boilers over two other alternatives primarily for economic and engineering reasons. The record indicates that appellee perhaps received some benefits not related to its compliance with EPA standards. The two new boilers at the Columbus plant increased from 71,000 pounds of steam per hour to 105,000 pounds of steam per hour, the steam-producing capacity of the Columbus plant. Also, oil burns approximately 12 percent more efficiently than coal. However, those benefits of the new boilers are not so significant as to affect our determination of the issue before us.

In *Transue & Williams, supra,* we held that a decision of

the Board of Tax Appeals, not to certify or exempt certain items related to the installation of air compressors which enabled the taxpayer to burn low sulphur oil and thereby comply with federal Environmental Protection Agency sulphur dioxide standards, was neither unreasonable nor unlawful. The taxpayer argued in that case that it would not have installed the equipment if it were not for the necessity of complying with these standards, and that all the facilities it installed were therefore "designed primarily for the control of air pollution." By holding that the board's decision was reasonable and lawful, we rejected the argument that the installation of an air pollution control facility for the purpose of complying with the Environmental Protection Agency regulation is *ipso facto* a facility which meets the definition of R. C. 5709.20(B).

*Transue, supra,* was followed by *Sun Oil Co.* v. *Lindley* (1978), 56 Ohio St. 2d 313. While the facts in that case differ from the facts in the case before us, in that the disputed costs were certain off-site expenses, we restated the rule that R. C. 5709.21 "does not permit exemption of property which serves a pollution control purpose and also provides an incidental function which benefits the taxpayer's production processes." *Id.* at page 317. We also stated that: "It is a familiar rule that in order for a taxpayer to derive the benefit of a statutory exemption from taxation, it must be proven that the property in question satisfies each and every requirement of the exempting statute.***Ohio Children's Society* v. *Porterfield* (1971), 26 Ohio St. 2d 30***."

We are required to give the statutes in question their plain meaning. See *Columbus-Suburban Coach Lines* v. *Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125. As we have recognized in previous decisions, the plain meaning of the statutes granting tax exemptions for air pollution control facilities is that such exemptions shall be allowed only for those parts of a facility that are designed primarily or used exclusively for the control of air or noise pollution. Applying the plain meaning of those words to the facts before us, it was not unreasonable or unlawful for the Board of Tax Appeals to conclude that the parts of the boilers which hold the water and steam for appellee's manufacturing process are not contemplated by the statutes.

Appellee argues that our decision should be controlled by the taxpayer's purpose for constructing or installing the facilities. It contends that, because the boilers and other equipment were installed solely for the purpose of complying with EPA standards and not for its economic benefit, it is entitled to receive the disputed costs as an exemption. However equitable that argument may be, it is not supported by the plain meaning of the words in R. C. 5709.20 and 5709.21 as previously interpreted by this court. If the test to be applied in determining what facilities shall receive an air pollution control certificate is to be broadened, the General Assembly must take such action. Clearly, those parts of the boilers that hold the water and steam are not designed primarily for the control of air or noise pollution, nor are they used exclusively for that purpose.

The record includes a specific breakdown of the cost of the components of the boilers. It appears that costs directly related to the fuel-burning components were included in the total cost of the new boilers, which were not certified by the Tax Commissioner. Applying the *Sun Oil, supra,* rule to this case, it appears that those costs reflect elements of the total boiler facilities that are designed, constructed or installed for the primary purpose of eliminating or reducing air pollution. Elements such as the fuel burner, the combustion control, and the gas analyzer, while serving the purpose of providing the heat for the water in the boilers, are directly related to the elimination or reduction of air pollution and should be exempted under R. C. 5709.21.

With respect to the related equipment and costs of installing the new boilers, the same test must be applied in determining whether those costs were reasonably and lawfully allocated by the Tax Commissioner for purposes of the exemption certificate. Appellee's project engineer testified that the new water softeners were installed at the Columbus plant to handle the new steam generating capacity of the boiler house because the existing equipment would not have delivered a quality of water suitable for the new boilers. Water quality was essential to prevent the corroding of the boilers at an accelerated rate. The water softeners clearly were associated with the operation of the boilers and were not designed

primarily for the control of air pollution, nor were they used exclusively for air pollution control.

With respect to the oil storage tanks and the supply and fill systems, the Tax Commissioner apparently applied a different method of computing the exemption at the two plants. He granted an exemption of 38.2 percent of the requested amount for the Gambrinus plant. The project engineer testified that there was an existing tank at that plant with a capacity of 125,000 gallons, and that as a result of a "management decision," two 300,000 gallon tanks were constructed to give them a three to four weeks' supply of oil, "in view of refinery problems, or trucker strikes, or anything of that nature." The Tax Commissioner, in effect, allowed an exemption that corresponds to the exemption for the No. 5 boiler which was substantially certified.

The exemption for the storage tanks at the Columbus plant is based upon approximately 77.8 percent of the amount requested but does not correspond to any exemptions granted for the boilers at that plant. No reason for the use of different methods of calculation is apparent in the record.

The monitoring devices that were installed as a part of the modification of the coal-fired boiler at the Columbus plant were installed to monitor particulate emission from the boiler and should have been certified for tax exemption by the Tax Commissioner. The Court of Appeals properly modified the Board of Tax Appeals' order to that effect.

The judgment of the Court of Appeals, modifying the exemption certificate to include the cost of installing the monitoring devices on the modified boiler at the Columbus plant, is affirmed. The judgments with respect to the other provisions of the decisions of the Board of Tax Appeals are reversed, and the cause is remanded to the Tax Commissioner to redetermine on a consistent basis for both plants the exemption granted for the storage tanks and the supply and fill systems, and to certify those parts of the boiler facilities that are designed and used to burn oil or gas.

*Judgments affirmed in part,*
*reversed in part and*
*cause remanded.*

CELEBREZZE, C. J., W. BROWN, P. BROWN and SWEENEY, JJ., concur.

LOCHER and HOLMES, JJ., dissent.

MOYER, J., of the Tenth Appellate District, sitting for DOWD, J.

HOLMES, J., dissenting in part. I must respectfully dissent from the opinion of the majority herein. Where a taxpayer, as here, makes extensive changes to his plant to accommodate a governmental environmental order, which modifications entail a great deal of capital expense that would not otherwise have been undertaken, it is only right that the taxpayer be given the consideration of relief from taxes upon that installation occasioned by such governmental order whose implementation has effected an improvement in the environment.

Although, as here, there may be a resulting net efficiency benefit to the manufacturer due to the installation of the new boilers or other plant installation, in that regard an improvement or benefit accrues to the taxpayer. However, the facts remain that the installation was not initiated by the taxpayer, but by governmental order; that the installation was ordered for the overall public benefit, *i.e.*, cleaner air; that the taxpayer expended significant sums to accommodate such order; and that the installation does indeed effect a higher air quality, and in this regard serves the public need.

In the evaluation of the totality of these circumstances I believe that a lawful conclusion may be reached that this equipment as installed by the taxpayer should reasonably be classified as pollution control devices, and therefore be given the benefit of the exemptions. I would affirm the Court of Appeals.

LOCHER, J., concurs in the foregoing dissenting opinion.