THE WHITE RUBBER COMPANY, APPELLEE, *v.*
LINDLEY, TAX COMMR., APPELLANT.

[Cite as White Rubber Co. v. Lindley (1981),
65 Ohio St. 2d   94.]

(No. 80-653—Decided March 31, 1981.)

*Messrs. Kane, Bangas & Sicuro* and *Mr. Terry G. P. Kane,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. James C. Sauer,* for appellant.

*Per Curiam.* The issue presented in the instant cause is whether the Board of Tax Appeals' determination, granting appellee an air pollution control certificate permitting tax exemption for its vapor adsorption system, is reasonable and lawful. See *Sun Oil Company* v. *Lindley* (1978), 56 Ohio St. 2d 313. R. C. 5709.21, the statute setting forth the certification procedure, provides in pertinent part:

"If the commissioner, after obtaining the opinion of the director of environmental protection, finds that the proposed facility was designed primarily for the control of air or noise pollution as defined in section 5709.20 of the Revised Code, and is suitable and reasonably adequate for such purpose and is intended for such purpose, he shall enter a finding and issue a certificate to that effect."

Several criteria are set forth by the above portion of R. C. 5709.21, which must be met before the adsorption system can be considered a "pollution control facility" exempt from taxation. First, the system must be designed and intended for the purpose of pollution control. Further, it must be suitable and reasonably adequate to fulfill that purpose. The board's findings in this regard are more than reasonable. Evidence presented to the board established that the sole use of the system was for the recovery of hydrocarbons from the air. Testimony indicated that it was removing 1,177 gallons of naphtha pollutants each day—hydrocarbons which previously were discharged into the atmosphere. There was no evidence adduced that the system was designed to achieve purposes other than pollution control or that the system was not adequately serving its designed function.

The Tax Commissioner, however, contends that the appellee's plant was not in violation of pollution standards when it discharged the naphtha into the air, prior to its acquisition of the vapor adsorption system. A witness of appellee, while acknowledging that the company had complied with current standards in this context, testified that the system was purchased in the anticipation of stricter pollution standards some indefinite time in the future.

R. C. 5709.20(B) defines an "air pollution control facility" as "any property designed, constructed, or installed for the primary purpose of eliminating or reducing the emission of, or

ground level concentration of, air contaminants which renders air harmful or inimical to the public health or to property within this state."

In addition, an "air contaminant" is defined in R. C. 5709.20(A) as "particulate matter, dust, fumes, gas, mist, smoke, vapor, or odorous substances, or any combination thereof." There is no legislative requirement that an air contaminant be specifically in violation of some pollution standard, outside the definitions contained within R. C. 5709.20. The board could reasonably conclude that an air contaminant and an air pollution control facility, as defined by statute, were involved. Indeed, it is obviously a commendable situation where a company seeks to limit its emissions to a level below those set by regulatory agencies. Voluntary expenditures in this regard are entitled to the legislatively created tax exemption just as are those expenditures made to comply with specific standards.[1]

Accordingly, we conclude that the adsorption system qualifies as an air pollution control facility. This, however, does not end our inquiry. R. C. 5709.21 further provides that: "[s]aid certificate shall permit tax exemption pursuant to section 5709.25 of the Revised Code only for that portion of such pollution control facility or that part used exclusively for air or noise pollution control."

The board concluded that the entire vapor adsorption system was used exclusively for air pollution control, finding that "[t]he naphtha recovery system does not affect the output or capacity of the manufacturing process, nor does it extend the useful life of the plant***." It was also noted in the board's decision that the facility was not installed for the workers' protection.[2] These findings by the board are both reasonable and lawful. The system is a separate component whose sole use is for air pollution control.

---

[1] In *Transue & Williams, Inc.,* v. *Lindley* (1978), 54 Ohio St. 2d 351, this court determined that installation of a facility for the purpose of complying with Environmental Protection Agency standards does not automatically qualify the facility under the definition contained in R. C. 5709.20(B).

[2] The last paragraph of R. C. 5709.20(C) provides:

"Facilities designed, constructed, installed, used, or placed in operation solely for the safety, health, protection, or benefit, or any combination thereof, of personnel, or by a business solely for its own benefit, are not pollution control facilities."

The Tax Commissioner contends that because appellee derives an incidental benefit from the system, the recovery of naphtha which can be reused as a solvent in its manufacturing process, appellee should not receive the air pollution control certificate permitting tax exemption for any part of the facility's cost. In past cases, this court has reviewed claimed pollution control facilities and scrutinized whether such expenditures provide "an incidental function which benefits the taxpayer's production processes." *Sun Oil Co.* v. *Lindley, supra,* at page 317; *Timken Co.* v. *Lindley* (1980), 64 Ohio St. 2d 224, 228. This incidental benefit criterion has been utilized to sever those expenditures which can be attributed exclusively for pollution control from those made in accompanying equipment modernization which enhance the taxpayer's production processes.

In the instant cause, the adsorption system is a single, separate component with which no associated equipment expenditures were made. Once the board determined that the component's sole use was for pollution control it was unnecessary for it to further examine the incidental benefits that appellee received from the recovery of hydrocarbons, which were previously discharged into the atmosphere.[3] Compliance with the exclusive use requirement contained within R. C. 5709.21 could reasonably be found without review of the incidental benefits conferred upon appellee.

For the foregoing reasons, the decision of the Board of Tax Appeals is affirmed.

*Decision affirmed.*

KRUPANSKY, P. BROWN, SWEENEY, LOCHER, DONOFRIO and C. BROWN, JJ., concur.

CELEBREZZE, C. J., dissents.

---

[3] A hypertechnical application of the incidental benefit test posited by the Tax Commissioner would result in the total denial of any tax exemption for the system because the used naphtha hydrocarbons, a petroleum byproduct, are recovered and reused. Yet, if these hydrocarbons were instead disposed of and not reused, an exemption would be granted. No reason can be given, at a time when energy conservation is of great importance, why the saving of energy resources, when coupled with improved air quality, should result in a tax disadvantage.

KRUPANSKY, J., of the Eighth Appellate District, sitting for W. BROWN, J.

DONOFRIO, J., of the Seventh Appellate District, sitting for HOLMES, J.

CELEBREZZE, C. J., dissenting.  I must respectfully dissent from today's decision which fashions a tax exemption that I am unable to find in my copy of R. C. 5709.21. With one judicial body blow, the majority eviscerates fundamental principles of Ohio tax law, the doctrine of *stare decisis* and the explicit language of R. C. 5709.21.

Initially, it is imperative to note that the taxpayer's vapor adsorption system recovers hydrocarbons which are, in turn, reused in the production process, thus effecting a sizeable cost-savings for the taxpayer, which is commendable, but not the objective of this tax exemption.

R. C. 5709.21 unambiguously sets forth a two-step process for the issuance of an air pollution control certificate. First, the Tax Commissioner must find that the equipment (1) was designed primarily for the control of air pollution; (2) is suitable and reasonably adequate for air pollution control; and (3) is intended for the control of air pollution.

Once the foregoing first hurdle is cleared, the taxpayer must then meet the second statutory prerequisite, which permits an exemption only for the equipment which is used exclusively for air pollution control.

In determining whether this taxpayer qualifies for the exemption, the court should be guided by time-tested principles of statutory construction, in general, and prior decisions construing R. C. 5709.21, in particular.

It has been a fundamental principle of Ohio tax law that exemption statutes are strictly construed against the person seeking the exemption. *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 2d 407, paragraph two of the syllabus. Moreover, this court has consistently refused to grant tax relief when such relief is not expressly provided for in a statute. See, generally, *Westinghouse* v. *Lindley* (1979), 58 Ohio St. 2d 137; *Beckwith & Assoc.* v. *Kosydar* (1977), 49 Ohio St. 2d 277. Today's decision undermines the aforementioned principles, which have long provided practical guidance to members of the tax bar in advising their clients.

Nothing in this court's prior decisions interpreting R. C. 5709.21 suggests the result reached by the majority. Indeed, in view of the recent decisions, *Timken Co.* v. *Lindley* (1980), 64 Ohio St. 2d 224, and *Sun Oil Co.* v. *Lindley* (1978), 56 Ohio St. 2d 313, cases in which this court so lately and decisively construed the precise issue in the case *sub judice,* it might be observed that the majority opinion is reminiscent of an O. Henry short story in that it ends with a surprise.

In *Sun Oil Co.* v. *Lindley, supra,* at page 316, the court ruled:

"Thus, this court has generally disallowed a tax exemption when property required to be 'used exclusively for charitable purposes,' under R. C. 5709.12, serves both a charitable purpose and an incidental private one* (see, *e.g., Philada Home Fund* v. *Bd. of Tax Appeals* [1966], 5 Ohio St. 2d 135, 214 N.E. 2d 431) or when public property required by statute to be 'used exclusively for a public purpose,' pursuant to R. C. 5709.08, is found to serve public and private objectives. See, *e.g., Dayton* v. *Roderer* (1977), 50 Ohio St. 2d 159, 363 N.E. 2d 740; *Cleveland* v. *Perk* (1972), 29 Ohio St. 2d 161, 280 N.E. 2d 653, citing at page 166: *Carney* v. *Cleveland* (1962), 173 Ohio St. 56, 180 N.E. 2d 14; *Troy* v. *Board* (1954), 160 Ohio St. 451, 116 N.E. 2d 725; *Division* v. *Board* (1948), 149 Ohio St. 33, 77 N.E. 2d 242; and *Cincinnati College* v. *State* (1850), 19 Ohio 110.***"

Most importantly, for purposes of the case at bar, this court, at pages 316-317, specifically decided that:

"***R. C. 5709.21, which exempts from taxation personal property '***used exclusively for air***pollution control,' does not permit exemption of property which serves a pollution control purpose and also provides an incidental function which benefits the taxpayer's production processes."

This approach was unequivocally accepted in *Timken Co.*

---

"*The General Assembly defined the meaning of the term 'used exclusively for charitable or public purposes' in R. C. 5709.121, effective October 24, 1969. All pertinent prior inconsistent interpretations of the phrase have yielded to this legislative mandate. *Galvin* v. *Masonic Toledo Trust* (1973), 34 Ohio St. 2d 157, 296 N.E. 2d 542. However, no such guidance has been provided for us in the field of air pollution control equipment. Apparently, in this case, the General Assembly intended that 'exclusively' should mean 'exclusively.'" (Footnote *sic.*)

v. *Lindley, supra,* paragraph one of the syllabus. See, also, *Transue & Williams, Inc.,* v. *Lindley* (1978), 54 Ohio St. 2d 351.

Applying the plain meaning of R. C. 5709.21 and controlling Ohio precedent to the White Rubber Co., it is immediately evident that this taxpayer is not entitled to a tax exemption. The taxpayer's vapor adsorption system effects a savings of $206 per day. At a yearly savings of approximately $62,000, based on a 300-day year, the taxpayer will recoup the cost of installing this equipment in a few short years. R. C. 5709.21 was specifically designed to give taxpayers an exemption for bona-fide air pollution control equipment which is used *exclusively* for air pollution control. R. C. 5709.21 was not intended to put private corporations on the public dole by underwriting resource recovery ventures.

Yet, the majority opinion, under the cloak of judicial review, invades the province of the General Assembly. The use of tax exemptions as a means of improving our environment is a device that I enthusiastically support. To me, however, it makes more sense to leave the formulation of tax and environmental policy to the General Assembly, which not only has the expertise and staff, but also, the constitutional duty to map strategy in these areas. I submit that the court's decision, given the philosophy of judicial review which it embodies, is, in the long run, a threat to environmental clean-up efforts. Today's judicial philosophy which creates an exemption can just as easily become tomorrow's judicial philosophy which nullifies environmentally-designed tax laws.

The lines of judicial interpretation and judicial legislation have not always been parallel, but today's decision coalesces them.