MARIETTA COAL COMPANY, APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as Marietta Coal Co. *v.* Lindley (1983), 6 Ohio St. 3d 6.]

(No. 82-1400—Decided July 13, 1983.)

*Messrs. Thompson, Hine & Flory* and *Mr. Paul W. Brown, Messrs. Benesch, Friedlander, Coplan & Aronoff, Mr. Jeffry L. Weiler* and *Mr. Richard L. Grossman,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. James C. Sauer,* for appellee.

*Per Curiam.* The issue presented in this case is whether the determina-

tion of the Board of Tax Appeals denying appellant an air pollution control certificate, which would permit tax exemption for its coal preparation facility, was reasonable and lawful.

R.C. 5709.21 provides, in pertinent part, as follows:

"If the commissioner, after obtaining the opinion of the director of environmental protection, finds that the proposed facility was designed primarily for the control of air or noise pollution as defined in section 5709.20 of the Revised Code, and is suitable and reasonably adequate for such purpose and is intended for such purpose, he shall enter a finding and issue a certificate to that effect. Said certificate shall permit tax exemption pursuant to section 5709.25 of the Revised Code only for that portion of such pollution control facility or that part used exclusively for air or noise pollution control."

The Board of Tax Appeals determined that Marietta was not entitled to an exemption because it was not creating the air pollution itself and thus was not seeking to limit its own emissions. This determination was, however, erroneous. R.C. 5709.21 contains no statement limiting exemptions on the basis of the identity of the polluter.

The statute clearly sets out the requirements necessary for the issuance of an air pollution control certificate. First, the proposed facility must be designed primarily for the control of air pollution. Second, it must be suitable and reasonably adequate for the proposed purpose. Third, the facility must be intended to control air pollution. Lastly, only such part of the facility as is used exclusively for pollution control is entitled to the tax exemption. In order to derive the benefit of this statutory exemption from taxation the taxpayer must prove that the property in question satisfies each and every requirement of the exempting statute. *Sun Oil Company* v. *Lindley* (1978), 56 Ohio St. 2d 313, 317 [10 O.O.3d 439]; *Dayton Sash & Door Co.* v. *Kosydar* (1973), 36 Ohio St. 2d 120 [65 O.O.2d 306]. This court concludes that appellant satisfied each of these requirements and that it was unreasonable and unlawful for the Board of Tax Appeals to add an additional element to the statutory scheme.

R.C. 5709.20 defines the term "air pollution control facility" as:

"(B) * * * *any property* designed, constructed, or installed for the primary purpose of eliminating or reducing the emission of, or ground level concentration of, air contaminants which renders air harmful or inimical to the public health or to property within this state.

"(C) * * *

"Facilities designed, constructed, installed, used, or placed in operation solely for the safety, health, protection, or benefit, or any combination thereof, of personnel, or by a business solely for its own benefit, are not pollution control facilities." (Emphasis added.)

This definition provides no reasonable basis for a distinction between a company constructing a coal-washing facility to control air pollution which operates at the mine and a coal user who constructs an identical facility

which operates at the power plant. Rather, the legislative intent was to exempt money spent for air pollution control equipment no matter who spent it, so long as the enumerated statutory requirements are fulfilled. The distinctions contained in the statute do not have reference to the identity of the polluter but are instead concerned with the type of property and purpose of equipment involved.

In the present case, it was the Ohio Power Company which initiated the pollution control development. Studies revealed it to be far cheaper for appellant to "wash" the coal than for Ohio Power to do so. Whichever company built and ran the facility, both the process and end result were to be the same. Because the property and equipment are the same in any event, and because the plant would satisfy the statutory definition of air pollution control facility in the hands of the utility, this court is persuaded that the plant also satisfies that same statutory definition in appellant's hands.

The Tax Commissioner argues that Marietta's purpose in constructing the plant was not to reduce pollution but to process a product for sale. Thus, appellee believes the facility to be run solely for Marietta's business benefit. This contention is without merit and ignores the factual findings of the case. The Board of Tax Appeals specifically found that appellant's sole purpose in constructing the coal preparation facility was to remove pollutants from the coal. Testimony was presented at the hearing before the board that such coal preparation was the single most effective method of reducing sulphur dioxide pollution in the atmosphere. Marietta's coal product was improved only to the extent that it resulted in less pollution. No evidence was presented that coal is more saleable after being washed. To the contrary, one-half of all Ohio coal sold today is sold raw or "unwashed" and Marietta has retained the capacity to sell such raw coal. Marietta derives no additional profit from the coal-washing facility and the refuse from the process has no economic value. Thus, the factual findings of the Board of Tax Appeals conclusively demonstrate that appellant's coal processing facility was designed and intended primarily for the control of air pollution.

Likewise, the factual findings establish that the facility is suitable and reasonably adequate for the purpose of controlling air pollution. Washing the coal removes twenty percent to thirty percent of the sulphur and reduces the ash content of the coal from twenty-two percent to sixteen percent. Additionally, it increases the efficiency of the scrubbers in the user's smokestacks. As was previously noted, this preparation method is the single most effective means of removing pollutants from the coal.

Lastly, the Board of Tax Appeals had no difficulty in making the factual determination that appellant's pollution control facility is used exclusively to eliminate or reduce the discharge of pollutants into the atmosphere. See *Sun Oil Company* v. *Lindley, supra; Timken Co.* v. *Lindley* (1980), 64 Ohio St. 2d 224 [18 O.O.3d 430]; *White Rubber Co.* v. *Lindley* (1981), 65 Ohio St. 2d 94 [19 O.O.3d 297]. The evidence in the record demonstrates that Marietta derives no incidental benefits from the coal preparation plant. Coal washing does not

result in any financial savings or additional profits to Marietta. The refuse material has no economic value and Marietta must bury it at the mine site before reclamation. None of the clean coal is burned by Marietta for its own purposes. Coal preparation does not benefit the health or safety of Marietta's employees. There is no need for Marietta to wash its coal in order to find a market for its product. In short, there is no incentive or benefit for appellant to process its coal aside from the need to reduce the air pollution from coal combustion.

Consequently, the evidence presented conclusively establishes that appellant satisfied the statutory criteria for the issuance of an air pollution control certificate. It was therefore unreasonable and unlawful for the Board of Tax Appeals to affirm the Tax Commissioner's denial of such a certificate.

The decision of the Board of Tax Appeals is reversed.

*Decision reversed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.