EARLY & DANIEL CO., INC., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Early & Daniel Co. *v.* Limbach (1988), 35 Ohio St. 3d 35.]

(No. 86-1327—Decided January 13, 1988.)

*Taft, Stettinius & Hollister* and *Stephen M. Nechemias,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellee.

*Per Curiam.* At issue in this case is whether the dividends received by a taxpayer from a domestic international sales corporation should be subject to apportionment to Ohio for the purposes of the franchise tax. For the period in question, the pertinent language of R.C. 5733.051 provided for the allocation or apportionment of net income as follows:

"(A) Net income of a corporation subject to the tax imposed by this chapter shall be allocated and apportioned to the state as follows:

"* * *

"(6) Dividends, which are not otherwise deducted or excluded from net income, shall be apportioned to this

state in accordance with the ratio which the book value of the physical assets of the payor thereof located in this state bear [*sic*] to the book value of the total physical assets of the payor thereof located everywhere. Dividends received from payors, the location of whose physical assets is not available to the taxpayer, shall be apportioned as provided in subdivision (8) of this division;

"\* \* \*

"(8) Any other net income, from sources other than those enumerated in subdivisions (1) to (7), inclusive, of this division, shall be allocated to the state on the basis of the apportionment mechanism provided in division (B) of section 5733.05 of the Revised Code."[1] (134 Ohio Laws, Part II, 1564-1565.)

Appellant's first two propositions of law will be considered together. Appellant maintains that payor did not own any property in Ohio and that the property owned in Kentucky had a book value of $125, the acquisition costs of the assets. Appellee argues that the only assets of the payor had a book value of zero. The apportionment ratio urged by appellant is 0/125, resulting in no apportionment being made to Ohio. Appellee's ratio results in no apportionment which can be made pursuant to R.C. 5733.051(A)(6)

as there is no book value for the physical assets of payor anywhere. Thus, the apportionment would be made under R.C. 5733.051(A)(8) and, consequently, according to the apportionment mechanism found in R.C. 5733.05(B).

The BTA characterized the initial transfer of the desk and chair to payor as a fictitious attempt to create a ratio to avoid apportionment of the dividends. The BTA found that there was never a book value on the books of the payor since they were fully depreciated at the time of their transfer to payor. Appellant challenges this finding and argues that "book value" means "acquisition costs" and not "net book value." The first question to be resolved, then, is what does the term "book value" mean in the context of the franchise tax.

Contrary to the argument of appellant, this court, in *Jacob B. Perkins Co.* v. *Glander* (1950), 153 Ohio St. 501, 41 O.O. 509, 92 N.E. 2d 690, did not apply the codified description of "book value" contained in the personal property tax statutes to the franchise tax. There, we did set forth the definition of book value provided for personal property tax matters, but declared that, for franchise tax purposes, the commissioner is required to

---

[1] R.C. 5733.051 now reads:

"Net income of a corporation subject to the tax imposed by this chapter shall be allocated and apportioned to this state as follows:

"\* \* \*

"(F) Dividends or distributions which are not otherwise deducted or excluded from net income, other than dividends or distributions from a domestic international sales corporation, are apportioned to this state in accordance with the ratio of the book value of the physical assets of the payor of the dividends or distributions located in this state divided by the book value

of the total physical assets of the payor located everywhere. Dividends or distributions received from a domestic international sales corporation, or from a payor the location of whose physical assets is unavailable to the taxpayer, are apportionable under division (H) of this section.

"\* \* \*

"(H) Any other net income, from sources other than those enumerated in divisions (A) to (G) of this section, is apportionable to this state on the basis of the mechanism provided in division (B)(2) of section 5733.05 of the Revised Code."

accept the book value as shown on the company's records. In *National Tube Co.* v. *Peck* (1953), 159 Ohio St. 98, 50 O.O. 74, 111 N.E. 2d 11, paragraph four of the syllabus, we held that the books of a business may be kept in accordance with any sound and generally recognized and approved accounting system in the absence of statute. We also held that under the franchise tax, book value should be determined from the books of a corporation which are kept in the ordinary course of the business in accordance with any sound and generally recognized and approved accounting system. *Id.* at paragraph five of the syllabus. We rejected the commissioner's argument that book value and market value are synonymous and also rejected the contention of the commissioner that the records kept by the taxpayer for the personal property tax should be used to determine book value for franchise tax purposes. We held that while such records may be useful, they were not used as a basis to report financial earnings to stockholders or others.

In *Woodland Garden Apts.* v. *Porterfield* (1968), 16 Ohio St. 2d 56, 45 O.O. 2d 332, 242 N.E. 2d 580, we affirmed a decision of the BTA which permitted the commissioner to fix the book value of the taxpayer's assets on the basis of the cost of construction less depreciation. This was the same valuation used by the taxpayer for its federal tax returns. We said that book value was the recognized criterion in fixing franchise taxes and cited *National Tube Co.* v. *Peck, supra.*

Since the franchise tax does not prescribe the manner in which the books of a taxpayer are to be kept, they are to be kept in accordance with any sound and generally recognized and approved accounting system. In the instant case there is no contention that payor's books were not kept in accordance with generally accepted accounting principles. Its books disclose that appellant transferred to payor a desk and a chair which were fully depreciated when transferred. These assets had no book value.[2]

Since the physical assets of the payor had no book value, the payor did not have any quantifiable physical assets. These dividends were properly added to net income and allocated on the basis of the three-factor formula of R.C. 5733.05(B). *Westinghouse* v. *Lindley* (1979), 58 Ohio St. 2d 137, 12 O.O. 3d 158, 389 N.E. 2d 473. The decision of the BTA is neither unreasonable nor unlawful.

The BTA also viewed the failure to include this dividend income in the apportionable net income base as a distortion of appellant's business activities in Ohio. Appellant challenges this finding in a separate proposition of law, as this finding may give appellee authority to adjust the three-factor formula pursuant to R.C. 5733.05 (B)(2)(d).[3]

Since our decision on appellant's first two propositions of law is dis-

---

[2] Appellant proposes that these assets were recorded in accordance with Accounting Principles Board Opinion No. 16 ("APB Opinion No. 16"), and asserts that this recording was done according to generally accepted accounting principles. Paragraph 5 of APB Opinion No. 16 specifically excludes the type of transfer involved herein, but Accounting Interpretation No. 39 of APB Opinion No. 16 does suggest that transferred assets be accounted for similarly as in the pooling of interests accounting of APB Opinion No. 16. As we read APB Opinion No. 16, a transfer of net assets is contemplated, and the recording is of the historical cost-based amounts. See Paragraphs 47, 51 and 52 of APB Opinion No. 16.

[3] R.C. 5733.05(B)(2)(d) states:

positive of this case, it is unnecessary to review this finding of the BTA. It appears that the finding was simply an alternate basis for the BTA's decision.

Accordingly, the decision of the BTA is affirmed.

*Decision affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

---

"If the allocation and apportionment provisions of division (B) of this section do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may request, which request may be in writing and must accompany the report, or the tax commissioner may require, in respect to all or any part of the taxpayer's allocated or apportioned base, if reasonable, any one or more of the following:

"(i) Separate accounting;

"(ii) The exclusion of any one or more of the factors;

"(iii) The inclusion of one or more additional factors which will fairly represent the taxpayer's allocated or apportioned base in the state.

"An alternative method will be effective only with approval by the tax commissioner."