ALCAN ALUMINUM CORPORATION, APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLANT.

[Cite as Alcan Aluminum Corp. *v.* Limbach (1989), 42 Ohio St. 3d 121.]

(No. 87-2178—Submitted January 18, 1989—Decided May 3, 1989.)

*Jones, Day, Reavis & Pogue, Roger F. Day* and *Nancy Truitt Blosser,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Mark A. Engel* and *James C. Sauer,* for appellant.

*Per Curiam.* Under the franchise tax, the net income of a corporation is allocated or apportioned to Ohio under R.C. 5733.05 and 5733.051. During the audit year, R.C. 5733.051(A)(5) and (6) (now R.C. 5733.051[E] and [F]) provided that capital gains realized from the sale of shares of stock were to be allocated in the same manner as dividends. These code provisions stated:

"Net income of a corporation subject to the tax imposed by this chapter shall be allocated and apportioned to this state as follows:

"* * *

"(5) Capital gains and losses from the sale or other disposition of intangible personal property which may produce income enumerated in subdivision (6) of this division shall be allocated on the same basis as set forth in such subdivision. * * *

"(6) Dividends, which are not otherwise deducted or excluded from net income, shall be apportioned to the state in accordance with the ratio which the book value of the physical assets of the payor thereof located in this state bear to the book value of the total physical assets of the payor thereof located everywhere. Dividends received from payors, the location of whose physical assets is not available to the taxpayer, shall be apportioned as provided in subdivision (8) of this division." (134 Ohio Laws, Part II, 1485, 1564-1565.)

Alcan apportioned the gain under then subdivision (8) (now R.C. 5733.051[H]), which read:

"Any other net income, from sources other than those enumerated in subdivisions (1) to (7), inclusive, of this division, shall be allocated to this state on the basis of the apportionment mechanism provided in division (B) of section 5733.05 of the Revised Code [the three-factor formula]." (134 Ohio Laws, Part II, 1565.)

The commissioner argues that the BTA misstated the meaning of the

term "available" and that it also imposed on her the burden of establishing that the assessment was correct. She asserts that "available" means "obtainable" and that Alcan has the burden to prove that her assessment is incorrect. Alcan responds that it did not have actual knowledge of the location of the physical assets of Kohler and that the evidence discloses that Alcan could not have obtained the information. Thus, according to Alcan, the commissioner should have used her subpoena powers to learn the location of Kohler's physical assets. Since we agree with the commissioner, we reverse the BTA's decision.

As the BTA recognized, R.C. 5733.051 is not ambiguous. Capital gains are to be apportioned to the state according to the ratio of the book value of the physical assets of the payor located within Ohio and located everywhere. If the location of the physical assets of the payor is not available to the taxpayer, the gains must be allocated under the three-factor apportionment formula. The meaning of the word "available" is, therefore, pivotal.

Under R.C. 1.42, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." In *Westinghouse Elec. Corp.* v. *Lindley* (1979), 58 Ohio St. 2d 137, 12 O.O. 3d 158, 389 N.E. 2d 473, the taxpayer received dividends from a domestic international sales corporation ("DISC") that had no physical assets. The taxpayer in that case would have received favorable tax treatment if the dividend income were apportioned under R.C. 5733.051(A)(6) and not allocated under the three-factor formula. It claimed that the DISC had physical assets outside Ohio because it had "constructive ownership" of the property. This court disagreed. We held that the DISC lacked physical assets and, because it

"had no capitalized assets with an ascertainable book value," *id.* at 145, 12 O.O. 3d at 162, 389 N.E. 2d at 477, it was required to allocate income under the three-factor formula.

Thus, we have interpreted "available" to mean "ascertainable." Dictionary definitions lend support to this interpretation. Black's Law Dictionary (5 Ed. 1979) 123; Webster's Third New International Dictionary (1986) 150. Therefore, the contextual meaning of "available" is that the shareholder must be able to ascertain or learn of the location of the physical assets of the payor. The BTA erred when it found that Alcan had to have actual knowledge of the location.

Furthermore, a fifty-percent shareholder such as Alcan would be expected to be able to learn of the location of the physical assets at least until the date of sale. Under R.C. 1701.37 (C), any shareholder has the right to examine the corporation's books and records of account. Alcan, therefore, could have learned of the location of Kohler's physical assets had it asserted its right to do so. The commissioner validly argues that Kohler's physical assets should have been "available" to Alcan.

The commissioner is also correct that the BTA erred when it reversed the assessment because there was no acceptable evidence supporting the conclusion that the location of Kohler's physical assets was available to Alcan. Absent a demonstration that the commissioner's findings are clearly unreasonable or unlawful, they are presumptively valid. Furthermore, it is error for the BTA to reverse the commissioner's determination when no competent and probative evidence is presented to show that the commissioner's determination is factually incorrect. *Hatchadorian* v. *Lindley* (1986), 21 Ohio St. 3d 66, 21 OBR 365,

488 N.E. 2d 145, paragraphs one and two of the syllabus.

Information regarding the location of Kohler's physical assets would normally be available to Alcan, and the commissioner had information that all the property was located in Ohio approximately two months prior to the sale date. Her finding is presumptively valid, and the BTA may not reverse it if there was no evidence presented to show that the commissioner's order was factually incorrect. Moreover, there is no evidence that Alcan even sought this information. Alcan had the burden to demonstrate that the commissioner's findings were incorrect. It did not sustain this burden.

Accordingly, the decision of the BTA is reversed.

*Decision reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.