**Keeler v. Limbach, Comm'r.**
*[Cite as 6 AOA 173]*

*Case No. L-89-342*

*Lucas County, (6th)*
*Decided August 24, 1990*

*Thomas G. Zraik, for Appellants.*

*M. Linda Weigand, for Appellee.*

This is an appeal from a decision of the Board of Tax Appeals ("BTA") affirming the imposition of an excise tax on motor vehicle fuel oil used by appellants, James K. and Patricia A. Keeler, as assessed by appellee, Joanne Limbach, Tax Commissioner of Ohio ("Tax Commissioner"). From that decision, appellants appeal and assign as error:

"THE BOARD OF TAX APPEALS ERRED IN AFFIRMING THE DECISION OF THE TAX COMMISSIONER 'DEEMING' APPELLANTS TO BE DEALERS IN MOTOR VEHICLE FUEL UNDER REVISED SECTION 5735.01(H) WHERE IT IS CLEAR THAT APPELLANTS PURCHASED THE FUEL IN QUESTION FOR USE ON THE PUBLIC HIGHWAYS."

The undisputed facts relevant to our disposition of this case are as follows:

The motor vehicle fuel tax assessed against appellants encompasses an audit period commencing on July 1, 1980 and ending on June 30, 1983. At all times during that period, appellants were partners in P & J Transportation Company ("P & J"), a trucking business operating in Ohio and several other states. Appellants purchased a majority of the motor vehicle fuel necessary for the operation of their trucks from Howard Gas & Oil Company ("Howard") and the Mobile Oil Corporation. The type of fuel purchased was diesel oil which has several other uses, e.g., for the heating of buildings, other than as for fuel for motor vehicles. Appellants were aware of the fact that the state of Ohio has a statutory process whereby one who purchases motor vehicle fuel oil within the state but uses it for an exempt purpose can obtain a refund of the excise tax paid on that purchase. See R.C. 5735.14.

During an audit of P & J, the tax commissioner discovered that appellants had failed to pay the state excise tax on approximately 430,000 gallons of diesel fuel that the partnership had purchased between July 1, 1980 and June 30, 1983. Appellants were assessed $49,055.14, inclusive of a penalty, for the unpaid taxes. However, appellants asserted that much of the diesel fuel had been used to operate trucks outside the state of Ohio and, after a hearing was held before the Ohio Department of Taxation, the tax commissioner entered a final assessment of $32,235.32, inclusive of a penalty. This reduced figure was reached by deducting the substantiated amount of diesel fuel consumed outside Ohio from the original estimate.

Appellants then appealed the decision of the tax commissioner to the BTA and contended that they could not be deemed a "dealer" under R.C. 5737.01(H) and were, therefore, not liable for any excise tax on purchased diesel fuel.

On September 1, 1988, a hearing was held before the BTA and the following facts, both disputed and undisputed, were adduced.

Leroy J. Koslaker, vice-president of Howard, testified that during the audit period his company sold between 30,000 to 35,000 gallons of diesel fuel per month to P & J. The diesel fuel would be delivered upon the purchaser's request, i.e., someone from P & J would place a telephone call to Howard and order that a quantity of gallons be delivered on the next delivery date. The diesel fuel would then be delivered by tanker truck and stored in underground tanks at appellants' place of business. Kolzaker disclosed that James Keeler personally called to order the fuel on several occasions during the relevant time period. Kolzaker stated that on some of those occasions Keeler would tell him not to charge the state excise tax because P & J was "ahead" on its taxes. Key testimony from Kolsaker included the following statement:

"Q. NOW, BUT NOW YOU SAY YOU DO REMEMBER THAT JIM KEELER SPECIFICALLY TOLD YOU NOT TO CHARGE TAX?

"A. THROUGH THE FACT THAT HE WAS AHEAD ON HIS TAXES. WHEN JIM CALLED, HE WOULD SAY, 'I AM AHEAD,' FOR WHATEVER REASONS, RUNNING IN TWO OR THREE DIFFERENT STATES, THAT HE WAS AHEAD AND NOT TO CHARGE TAX ON A PARTICULAR INVOICE OR A PARTICULAR DELIVERY."

David D. Miller, a tax commissioner agent for the state of Ohio, testified that appellants were audited because reports which were required of Howard as a licensed motor vehicle fuel

dealer divulged that appellants had not paid the state excise tax on some of their purchases. As attested to by Miller and James E. Jarzabek, Supervisor in the Motor Vehicles Division of the Ohio Department of Taxation, invoices were employed to compute the taxes owing to the state of Ohio. Miller testified that during the audit Keeler had told him that the reasons for nonpayment of the tax at the time of purchase were (1) the partnership used "a lot of fuel in other states besides Ohio" and it did not want to pay the tax on fuel used outside the state twice-once in Ohio and once in the state where the fuel was used; and (2) appellants did not want to go through the "hassle" of filing for a refund on the fuel purchased in Ohio but used outside the state. Jarzabek also testified that appellant had applied for a refund permit under R.C. 5735.16 in July 1981 but had never applied for a refund on purchased fuel used outside Ohio until after the audit period.

James Keeler, in his testimony, denied ever telling anyone not to charge the state excise tax on any of his purchases of diesel fuel. He further stated that everyone knew that the purpose of each purchase was for the operation of the trucks used in his business. Keeler acknowledged the fact that the partnership had applied for a refund permit, but also admitted that no refund claims were filed until "towards the end of the business." Appellants ceased operating P & J in 1985.

Invoices detailing purchases of diesel oil from Howard to P & J were introduced into evidence and indicated whether the state excise tax had been paid on a particular purchase.

As a preliminary matter, we note that appellee raises the question of whether this court has the jurisdiction to entertain the instant appeal. The question of jurisdiction was resolved by this court, upon appellee's motion to dismiss, on March 5, 1990. *See Keeler v. Limbach* (Mar. 5, 1990), Lucas App. No. L-89-342, unreported. We, therefore, will not consider appellee's arguments relating to the issue of jurisdiction.

In their sole assignment of error, appellants contend that they cannot be deemed a "dealer" under R.C. 5735.01(H) for the purpose of imposing the state excise tax. Specifically, appellants argue that so long as the untaxed motor vehicle fuel was used in the operation of their motor vehicles, they cannot be deemed to be "dealers" under R.C. 5735.01(H). Thus, appellants conclude that the licensed dealer in motor vehicle fuel, rather than the Keelers, is responsible for any assessed excise tax during the audit period.

The findings of the tax commissioner are presumptively valid. *Alcan Aluminum Corp. v. Limbach* (1989), 42 Ohio St. 3d 121, 123. In an appeal to the BTA, the burden is on the taxpayer to demonstrate that the tax commissioner's findings are clearly unreasonable or unlawful. *Alcan Aluminum Corp., supra; R.R.Z. Associates v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St. 3d 198, 201; *Hatchadorian v. Lindley* (1986), 21 Ohio St. 3d 66, paragraph one of the syllabus. In reaching its decision, the BTA has wide discretion in determining the credibility of the witnesses and the weight of the evidence. *R.R.Z. Associates, supra*, at 201. Absent an affirmative showing on the record that the BTA's decision as to a question of fact was unreasonable or unlawful, this court cannot disturb said decision. *Id.* See, also, *Alcan, supra, Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St. 2d 47, syllabus.

The term "dealer", as used in the revised code, has specific statutory definitions and includes one who has obtained a license to "receive, use, sell or distribute"motor vehicle fuel in Ohio, R.C. 5735.02, as well as the business or individual who either imports motor vehicle fuel into the state or processes motor vehicle fuel in the state for use, distribution, sale or delivery within Ohio, R.C. 5735.01(F). R.C. 5735.01(H) adds yet another definition to the category of "dealer" by providing:

"The number of gallons of *** diesel fuel oil *** not sold *** for the purpose of generating power for the propulsion of motor vehicles upon the public highways *** within the boundaries of this state, but thereafter used *** to generate power for the propulsion of motor vehicles upon the public highways *** within this state, is deemed received at the time of the use thereof, and *the user is deemed to be the dealer as to any unpaid taxes levied in connection therewith.*" (Emphasis added.)

R.C. 5735.05 levies an excise tax on all "dealers" in motor vehicle fuel upon the use, distribution or sale within the state by them of motor vehicle fuel. Thus, pursuant to 5735.01(H), anyone who purchases diesel fuel for a purpose other than operating a motor vehicle on the public highways of the state of Ohio, but subsequently does use the diesel fuel for that purpose is considered a "dealer" under the statute and is responsible for any unpaid excise taxes on the purchase. See e.g., *Ohio Truckload Carriers, Inc. v. Limbach* (June 29, 1990), BTA No. 87-B-272 (Claimed off-road usage not proven); *Partin v. Limbach* (June 29, 1990), BTA No. 88-F-74

(Claimed sales for heating purposes not proven); *Complete Leasing Co. v. Limbach* (May 19, 1986), BTA No. 83-C-960 (off-road use in refrigeration trucks proven) and *Chemlawn Corp. v. Lindley* (Feb. 28, 1983) BTA No. 81-E-100 (off-road use to operate spraying equipment proven)

Appellant asserts that the mere use of the diesel fuel in a motor vehicle automatically makes the seller of that fuel responsible for the excise tax. However, R.C. 5735.01(H) was enacted to prevent the *user* of diesel fuel from claiming that fuel will be used in a nontaxable function under R.C. 5735.05 thereby avoiding the payment of an excise tax on the purchase and then subsequently using the fuel in a taxable manner. *Partin, supra*; Ohio Truckload Carriers, Inc., supra. Accord, *Cornett Trucking Co., Inc. v. Lindley* (May 3, 1982), Montgomery App. No. 7465, unreported. This was the exact situation presented to the BTA in this case. One of the nontaxable functions or exemptions found in R.C. 5735.05(A) is for a purchase of diesel fuel "wholly for the purposes *other than* propelling motor vehicles on the public highways \*\*\* *within this state.*" (Emphasis added.) Therefore, if an individual purchases motor vehicle fuel in the state of Ohio and claims that said fuel will be used only for the propulsion of motor vehicles outside the state of Ohio, that use is a nontaxable function. If that fuel, or any part of it, is subsequently used to propel motor vehicles on the public highways *within Ohio*, the user can be deemed a "dealer" for the collection of excise tax due on the portion used in Ohio. In addition, one who uses diesel fuel in such a nontaxable manner, i.e., to propel motor vehicles outside the state of Ohio, is expected to pay the excise tax at the time of the transaction and to then follow the statutory procedures set forth in R.C. 5735.14 in order obtain a refund of the paid taxes. See e.g., *Chemlawn, supra.*

The BTA had competent evidence before it indicating that appellants had not paid the requisite excise tax during the audit period and that appellant, James Keeler, had requested that no tax be imposed because the diesel fuel was to be used for an exempt function, i.e., operating trucks out-of-state. In its discretion, the BTA determined that the testimony of Miller and Koslaker was more credible than that of Keeler and accorded greater weight to that testimony. Additionally, the BTA heard evidence disclosing the fact that P & J had failed to file any claim for a refund during the audit period even though, as discovered later, it would be entitled to a refund for portions of the purchased fuel under R.C. 5735.14, and had, in fact, applied for a refund permit. Under circumstances such as these, the user can be deemed a "dealer" and the Ohio Department of Taxation may impose the tax on the user, rather than on the seller.

This case can be distinguished from *Central Transport, Inc. v. Lindley* (Feb. 28, 1985), BTA 8-F-68, which is cited by appellants as support for their position. In *Central Transport, Inc.* the appellant was a Michigan corporation engaged in the common carrier business and maintained several terminals in Ohio. Motor fuel oil, purchased from a duly licensed Ohio dealer located in Indiana was stored at the terminals and used solely for the operation of Central Transport, Inc.'s trucks. The tax commissioner determined that Centra Transport, Inc.'s had failed to pay any tax on the fuel coming into Ohio and assessed said tax. On appeal to the BTA, *no* evidence was introduced tending to show that appellant had told the motor vehicle fuel vendor that the fuel was for any purpose other than operating motor vehicles on the public highways of Ohio. In fact, evidence was offered to show that Central Transport, Inc. had reason to believe that the 'excise tab was part of the negotiated price for the motor vehicle fuel. Unlike *Central Transport, Inc., supra,* in this case the BTA had evidence before it to show that appellants had intentionally caused the motor vehicle fuel to be delivered at an untaxed price. Therefore, appellants could be deemed "dealers" under R.C. 5735.0.1(H), and the decision of the BTA finding the Keelers responsible for the unpaid excise taxes was not unlawful or unreasonable. Appellants' sole assignment of error is found not well-taken.

On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Ohio Board of Tax Appeals is affirmed. Costs assessed against appellants.

GLASSER, J., RESNICK, J., concur.
ABOOD, J., concurs in judgment only.