Dana Corporation, Appellee, v. Limbach, Tax Commr., Appellant.

[Cite as Dana Corp. *v.* Limbach (1991), 60 Ohio St. 3d 26.]

(No. 90-730—Submitted February 13, 1991—Decided May 22, 1991.)

*Jones, Day, Reavis & Pogue, Roger F. Day* and *Laura A. Kulwicki,* for appellee.

*Lee I. Fisher,* attorney general, and *Richard C. Farrin,* for appellant.

*Per Curiam.* We hold that the BTA's decision on the foreign income deductions was reasonable and lawful and, thus, affirm it. However, we hold that Dana failed to specify error concerning deducting property of financial institutions and insurance companies from its net worth property fraction in its notice of appeal filed with the BTA. Consequently, we reverse this aspect of the BTA's decision.

## I. Foreign Income Deduction

R.C. 5733.04(I) defines "net income" for the franchise tax as:

"* * * [T]he taxpayer's taxable income before operating loss deduction and special deductions, as required to be reported for the taxpayer's taxable year under the Internal Revenue Code, subject to the following adjustments:

"* * *

"(2)  Deduct any amount included in net income by application of section 78 or 951 of the Internal Revenue Code, amounts received for royalties, technical or other services derived from sources outside the United States, and dividends received from a subsidiary, associate, or affiliated corporation that neither transacts any substantial portion of its business nor regularly maintains any substantial portion of its assets within the United States[.]"

The commissioner argues that her use of the Form 1118 expenses to determine net foreign income is presumptively valid and that Dana failed to demonstrate otherwise. Dana responds that it should not follow the federal methodology because the resulting expense amounts are not derived in a "comparable context" to the franchise tax and that it should deduct only directly related expenses. It also argues that the record contains sufficient, probative evidence to sustain the BTA's finding on the directly related expenses Dana seeks to deduct.

R.C. 5733.04(I)(2) permits a taxpayer to "[d]educt any amount included in net income" received from specified foreign sources. In *Westinghouse Elec. Corp.* v. *Lindley* (1979), 58 Ohio St. 2d 137, 140-142, 12 O.O. 3d 158, 160-161, 389 N.E. 2d 473, 475-476, we held that the amount Westinghouse could deduct was a net amount, in that case net royalties, because Westinghouse's federal taxable income included only this net amount. We did not there require this amount to be calculated as in the federal credit limit, and we do not here find the calculations underlying the federal credit helpful. Today, we announce how to ascertain this net amount.

Section 61, Title 26, U.S. Code defines "gross income," the starting

28

point in determining taxable income, to include foreign income. However, Section 901, Title 26, U.S. Code allows a taxpayer to credit amounts paid in taxes to foreign countries against the federal income tax. Section 904, Title 26, U.S. Code limits this credit to what would be paid if the income were subject to federal income tax. To determine the credit limit, the taxpayer applies the ratio of foreign taxable income divided by total taxable income to the federal tax against which the credit will be taken.

Section 862(b), Title 26, U.S. Code determines foreign taxable income by subtracting expenses apportioned and allocated to the foreign source from foreign gross income. Treasury Reg. 1.861-8 provides for calculating such expenses. "These regulations mandate a process of 'allocating' specific related expenses to items of income and 'apportioning' other less clearly related expenses to such income." 12 Mertens, Law of Federal Income Taxation (1987), Chapter 45.3, Section 45-3.03, at 9.

Lower foreign expenses for the Ohio franchise tax results in greater foreign net income and a greater deduction from Ohio net income. On the other hand, attributing greater amounts to foreign expenses results in greater Ohio franchise tax because it decreases the deduction.

Furthermore, in computing the tax credit limit, the federal regulations deduct ratably apportioned expenses that presume the taxpayer incurred them to generate the foreign income, despite any connection with the foreign income. For example, the federal regulations require Dana to deduct from foreign income a portion of charitable contributions paid entirely to United States charities. These contributions could not have generated foreign income.

The context of Ohio's franchise tax here is to ascertain the amount of foreign income included in Ohio net income, not to compute a tax credit limit. As noted, Dana, in fact, had no reason to challenge the expenses for the federal tax. Moreover, a taxpayer calculates the federal limit with patently unassociated expenses. Therefore, we rule that the Form 1118 expense calculations arise in a different context than the franchise tax foreign net income deduction and that the calculations do not result in the amount included in Ohio net income.

However, we find guidance for ascertaining the amount of foreign income included in Ohio net income in Financial Accounting Standards Board, Accounting Standards (1982), Statement No. 14, which "establishes disclosure requirements that are intended to provide information concerning the extent to which an enterprise * * * operates within foreign countries * * *." Collins & Spoede, Financial Accounting Standards Practice Update (1983) 14-2. The statement requires a disclosure of a measure of profitability for foreign operations, such as operating profit or net income. Statement No. 14, *supra,* at 918, paragraph 35b. The most popular measure is operating profit or loss as calculated for industry segments. Collins & Spoede, *supra,* at 14-20. For this, the statement refers to the definition of "operating profit or loss," as explained by Collins & Spoede:

"The operating profit or loss of an industry segment is its revenue minus its operating expenses * * *. The following items are specifically *excluded* from the determination of an industry segment's operating profit or loss:

"1. Revenue earned at that corporate level and not derived from the operations of any industry segment

(e.g., gains and losses on sales of marketable securities).

"2. General corporate expenses that relate to the enterprise's central administrative function (e.g., corporate officers' salaries and general legal costs).

"3. Interest expense (unless the segment's operations are financial in nature, e.g., banking, insurance, leasing or financing).

"4. Domestic and foreign income taxes.

"5. Equity in income or loss of unconsolidated subsidiaries and other unconsolidated investees.

"6. Gain or loss on discontinued operations (as defined in *APB Opinion No. 30*).

"7. Extraordinary items.

"8. Minority interest.

"9. Cumulative effect of a change in accounting principle." (Emphasis sic.) *Id.* at 14-6 to 14-7; Statement No. 14, *supra,* at 913, paragraph 10d.

Furthermore, the statement defines "operating expenses" to be "* * * the sum of (1) expenses directly traceable to the industry segment (whether related to sales to unaffiliated customers or to intersegment sales), and (2) a reasonable allocation of expenses that benefit more than one industry segment (e.g., data processing costs). * * *" Collins & Spoede, at 14-6.

We approve and adopt this reasoning. Consequently, under R.C. 5733.04 (I)(2), a taxpayer may deduct from Ohio net income its operating profit from foreign operations. To determine this operating profit, the taxpayer shall deduct from gross foreign income (1) the taxpayer's operating expenses that are directly traceable to the foreign operation and (2) a reasonable allocation of the taxpayer's other expenses that benefited the foreign operation.

In the instant case, Dana convinced the BTA that the commissioner had deducted expenses in addition to its operating expenses. Dana proved the amount of stewardship expenses directly traceable to the foreign income, and the BTA approved this adjustment to foreign income. Dana established that the remaining amount by which the commissioner had reduced foreign income was neither so traceable nor otherwise beneficial to Dana's foreign operations.

Dana incurred the interest expense to finance domestic operations. It spent on research and development to improve its domestic product. It donated charitable contributions solely to domestic charities. Its legal and accounting fees had no connection to foreign operations. It paid state and local taxes domestically and identified stewardship expenses unrelated to foreign operations. We hold that sufficient, probative evidence supports the BTA's findings, and we affirm its decision. *Hawthorn Mellody, Inc.* v. *Lindley* (1981), 65 Ohio St. 2d 47, 19 O.O. 3d 342, 417 N.E. 2d 1257, syllabus.

## II. Deduction from Net Worth Property Fraction

At Dana's urging, the BTA deducted from Dana's property fraction, which Dana applies to one half of its net worth to apportion net worth to Ohio, R.C. 5733.05(A), all the property owned by Dana's second-tier and third-tier insurance companies and financial institutions. The commissioner argues that Dana failed to specify this error in its notice of appeal and that the BTA was without jurisdiction to consider it. Dana maintains that it referred to all faulty applications of R.C. 5733.05 when it referred to this statute in the notice.

For the BTA and, subsequently, an

appellate court to have jurisdiction to decide a claimed error, a taxpayer must specify the error in its notice of appeal to the BTA. *Osborne Bros. Welding Supply, Inc.* v. *Limbach* (1988), 40 Ohio St. 3d 175, 178, 532 N.E. 2d 739, 742. An appellant does not specify all claimed errors under a statute by naming that statute and specifying one error under it. *Lenart* v. *Lindley* (1980), 61 Ohio St. 2d 110, 115, 15 O.O. 3d 152, 155, 399 N.E. 2d 1222, 1225; *Manfredi Motor Transit Co.* v. *Limbach* (1988), 35 Ohio St. 3d 73, 77, 518 N.E. 2d 936, 940-941.

Paragraph three of Dana's notice of appeal states:

"*Situs of intangibles:* The Tax Commissioner erred in interpreting and applying O.R.C. § 5733.05, § 5709.02 and § 5709.03 so as to situs entirely in Ohio Dana's investments in the capital stock of, and advances to, corporations in which Dana owned more than 51% of the common stock. The improper situsing of such intangibles results in attributing to Ohio an excessive portion of the value of Dana's issued and outstanding shares of stock for franchise tax purposes."

As to situsing of intangible property, R.C. 5733.05(A) states:

"In determining the value of intangible property, including capital investments, owned or used in the state by either a domestic or foreign corporation, the commissioner shall be guided by sections 5709.02 and 5709.03 of the Revised Code, except that investments in the capital stock of or loans and advances to subsidiary corporations at least fifty-one per cent of whose common stock is owned by the reporting corporation shall be allocated in and out of state in accordance with the value of physical property in and out of the state representing such investments, loans, and advances."

Under this language, the BTA had "looked through" the second- and third-tier subsidiaries to the property they owned to situs Dana's investments in such corporations. However, Dana, for the first time at the BTA hearing, urged the BTA to deduct from both sides of the property fraction all the property of second- and third-tier insurance companies and financial institutions. For this assertion, Dana relied on earlier language in the statute:

"* * * Take one part [one half of the net worth] and multiply it by a fraction whose numerator is the net book value of all the corporation's property owned or used by it in this state, and whose denominator is the net book value of all its property wherever situated, in each case eliminating, to the extent included, the investments in the capital stock or in the indebtedness of public utilities [of which at least eighty percent of the utility's issued and outstanding common stock is owned by the corporation], insurance companies [of which at least eighty percent of the insurance company's issued and outstanding common stock is owned by the corporation], and financial institutions [of which at least twenty-five percent of the financial institution's issued and outstanding common stock is owned by the corporation] as described in division (A)(5) of this section * * *."

Dana stated nothing about deducting the property of insurance companies and financial institutions from the property fraction in its notice of appeal. Nor did it enumerate the subsidiaries about which it claimed this error. Moreover, the corporate control requirements to eliminate investments in insurance companies and financial institutions are different from the control requirements of the situsing language that Dana mentioned in the

notice of appeal. Furthermore, the situsing language directs situsing property in Ohio if the subsidiary's property is in Ohio and situsing the remainder outside Ohio; the language concerning insurance companies and financial institutions eliminates the investments entirely from both numerator and denominator of the property fraction. Thus, Dana's claim is far different from the language stated in the notice and, consequently, it failed to specify this as error.

Accordingly, we affirm the BTA's decision deducting the operating profit from foreign operations after netting income with directly traceable expenses and reasonably allocated expenses that benefited the foreign operations. We reverse the BTA's decision deducting the property of subsidiary insurance companies and financial institutions from its net worth property fraction.

*Decision affirmed in part
and reversed in part.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

HOLMES, J., concurs in part and dissents in part.

HOLMES, J., concurring in part and dissenting in part. I would affirm the Board of Tax Appeals in all respects.