GENERAL MILLS, INC. ET AL., APPELLEES AND CROSS-APPELLANTS,
*v.* LIMBACH, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as *General Mills, Inc. v. Limbach* (1992), 63 Ohio St.3d 273.]

(No. 90–2154—Submitted November 14, 1991—Decided March 18, 1992.)

*Jones, Day, Reavis & Pogue* and *Roger F. Day,* for appellees and cross-appellants.

*Lee I. Fisher,* Attorney General, and *James C. Sauer,* for appellant and cross-appellee.

*Per Curiam.* The decision of the BTA is affirmed in part and reversed in part.

I

Losses arising from General Mill's federal tax benefit agreements are apportionable under R.C. 5733.051(H).

R.C. 5733.051 provides in part as follows:

"Net income of a corporation subject to the tax imposed by this chapter shall be allocated and apportioned to this state as follows:

" * * *

"(B) Net rents and royalties from tangible personal property, to the extent such property is utilized in this state, are allocable to this state if the taxpayer is otherwise subject to the tax provided by this chapter;

" * * *

"(H) Any other net income, from sources other than those enumerated in divisions (A) to (G) of this section, is apportionable to this state on the basis of the mechanism provided in division (B)(2) of section 5733.05 of the Revised Code."

These safe harbor sale and leaseback agreements, as indicated in a typical agreement presented as Exhibit 4 to the BTA at a hearing before it, provided

for a fictitious sale of equipment to General Mills "solely for purposes of Federal tax law." Legal title, as well as physical possession of the equipment, remained with the seller/lessee. Beyond an initial cash payment for the value of the tax benefits to be transferred, there was no actual payment of a purchase price, or of principal or interest, or rent, but payment was fictitiously "deemed" made. The program was designed to jump-start the economy and to afford tax benefits to the purchaser and cash flow to the seller. General Mills was entitled to claim federal income tax deductions for the depreciation under the accelerated cost recovery system as well as investment tax credits from the property purchased. A number of other large corporations took advantage of this federal program, including Goodyear Tire & Rubber Company. We have recently decided a franchise tax appeal involving Goodyear which is dispositive of the first issue in the instant appeal. In *Goodyear Tire & Rubber Co. v. Limbach* (1991), 61 Ohio St.3d 381, 575 N.E.2d 146, we approved Goodyear's apportionment of deductions from its net income under former R.C. 5733.051(A)(8). We concluded the transaction was a sale of intangible tax benefits. The agreement was not a lease of tangible personal property since Goodyear did not acquire title to, or possession of, the equipment. It owned only the tax deductions. The same applies here. The decision of the BTA in this regard is reasonable and lawful and is affirmed.

## II

The BTA determined that CPG's statement in its notice of appeal that "[t]he Commissioner miscalculated appellant's foreign source income deduction allowed under R.C. § 5733.04" was sufficient "to put all on notice that the Appellant intended to prove a computational error in the calculations of the foreign source income deduction."

There was no need for CPG to present details of the procedure by which the specification of error was to be established. R.C. 5717.02 merely requires that the error be presented with sufficient specificity to apprise the BTA of the nature and extent of the alleged error. *Abex Corp. v. Kosydar* (1973), 35 Ohio St.2d 13, 64 O.O.2d 8, 298 N.E.2d 584. The conclusion reached by the BTA was neither unreasonable nor unlawful, and in fact did identify the nature and extent of CPG's contention.

## III

An analysis of the issue of computing the foreign source income deduction allowable by R.C. 5733.04(I) is basic. The statute defines "net income" as:

" * * * [t]he taxpayer's taxable income before operating loss deduction and special deductions, as required to be reported for the taxpayer's taxable year

under the Internal Revenue Code, subject to the following adjustments: * * *." The permitted adjustments from net income are those amounts of foreign source income which previously had been included in the taxpayer's federal taxable income. Federal taxable income is an accepted concept.

In determining the amount of foreign source income, the commissioner examined the taxpayer's federal Form 1118, which is used to calculate a credit in the amount of U.S. tax for which the taxpayer was liable on income from foreign sources.

The BTA, after quoting *Westinghouse Elec. Corp. v. Lindley* (1979), 58 Ohio St.2d 137, 12 O.O.3d 158, 389 N.E.2d 473, stated: " * * * the foreign source income exclusion is a matter of legislative grace and is intended to exclude for state purposes the same amount of income included for federal purposes." The BTA found that CPG's method of calculation "would permit an Ohio net income deduction in a different manner and to a greater extent [than] such income was included as federal taxable income." Accordingly, the BTA rejected CPG's claim. That decision was unreasonable and unlawful. As stated in *Dana Corp. v. Limbach* (1991), 60 Ohio St.3d 26, 29, 573 N.E.2d 39, 43:

" * * * Consequently, under R.C. 5733.04(I)(2), a taxpayer may deduct from Ohio net income its operating profit from foreign operations. To determine this operating profit, the taxpayer shall deduct from gross foreign income (1) the taxpayer's operating expenses that are directly traceable to the foreign operation and (2) a reasonable allocation of the taxpayer's other expenses that benefited the foreign operation."

This matter is remanded to the BTA for its determination of the proper adjustment from gross foreign income as herein set forth.

For the reasons herein stated, the decision of the BTA is affirmed in part, reversed in part and remanded to the BTA for further consideration.

*Decision affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.