[This decision has been published in *Ohio Official Reports* at 78 Ohio St.3d 83.]

TEXAS EASTERN TRANSMISSION CORPORATION, APPELLEE, *v*. TRACY, TAX COMMR., APPELLANT.

PANHANDLE EASTERN PIPELINE COMPANY, APPELLEE, *v*. TRACY, TAX COMMR., APPELLANT.

[Cite as *Texas E. Transm. Corp. v. Tracy*, 1997-Ohio-233.]

*Taxation—Personal property valuation—Public utilities—Natural-gas pipeline companies can use a unit-appraisal approach to determine the true value of their taxable personal property absent special or unusual circumstances.*

(Nos. 95-1514 and 95-1515—Submitted October 15, 1996—Decided March 26, 1997.)

APPEALS from the Board of Tax Appeals, Nos. 93-P-594 and 93-P-595.

———————————

{¶ 1} Texas Eastern Transmission Corporation ("TET"), appellee, is a natural-gas pipeline transmission company which transports and stores natural gas from producing fields in Texas, Louisiana and the Gulf of Mexico to customers in the Northeast. Its transmission system consists of two onshore pipelines--a thirty-inch system which transports gas from southeast Texas and Louisiana through Mississippi, Alabama, Tennessee, Kentucky and Ohio through West Virginia into Pennsylvania, and a twenty-four-inch system, which transports gas from farther west in Texas through Arkansas, Missouri, Illinois, Indiana and Ohio through West Virginia into Pennsylvania.

{¶ 2} The twenty-four-inch system was originally built by the government during World War II but was purchased by TET in 1947. When the twenty-four-inch system was originally installed, the entire pipeline, except for a portion between Lebanon, Ohio, and Eagle, Pennsylvania, was coated to prevent corrosion.

Eventually, the uncoated pipe corroded, which caused a reduction in pressure. As a result, TET was in danger of being unable to move contracted capacities of natural gas to its customers and to do so in a safe fashion. To help restore the lost capacity in Ohio and Pennsylvania, TET undertook the Capacity Restoration Project, which replaced the uncoated pipe at a cost of $81.2 million.

{¶ 3} Prior to 1990, TET's property was assessed by "unit appraisal." Under this method, the value of the entire operating system is determined and then an amount is allocated to those components located within the various states. In late 1989, R.C. 5727.11 was enacted, which calls for a cost capitalization method of appraisal. The statutory procedure determines true value by multiplying the capitalized cost of the taxable personal property by a predetermined percentage factor.

{¶ 4} For tax year 1991, the Ohio Department of Taxation applied the newly enacted statutory formula set forth in R.C. 5727.11(B) in assessing appellee's property. It determined the true value of TET's taxable personal property in Ohio to be $179,022,860 as of January 1, 1991. TET appealed the assessment to the Tax Commissioner, appellant, who affirmed the initial determination.

{¶ 5} TET appealed the Tax Commissioner's decision to the Board of Tax Appeals ("BTA"). In challenging the use of the statutory valuation procedure, TET argued that the statutory formula does not represent true value and that the $81.2 million Capacity Restoration Project represents a special or unusual occurrence. TET presented the expert testimony of Thomas K. Tegarden, who proposed in place of the statutory formula, use of the "unit-appraisal method." Under this method, the value of the unit is first determined. Then, the value of the properties being appraised is determined by measuring their contribution to the unit. Since TET's interstate pipeline systems operate as an integrated group of properties that work together to provide a service, Tegarden testified that the unit-appraisal method is the proper valuation procedure to be applied. He explained that due to the very

2

nature of a natural gasline property, it is more appropriate to value the property as a unit rather than to value the individual components separately. In addition, he pointed out that TET's rates, earnings and accounting methods are regulated as a unit by the Federal Energy Regulatory Commission.

{¶ 6} Using the unit-appraisal method, Tegarden first valued the entire transmission system as a whole by using a cost-approach analysis, an income-approach analysis, and a stock-and-debt-approach analysis. In giving greatest weight to the income approach, Tegarden arrived at a total system value of $1,425,000,000. Next, Tegarden apportioned 8.14 percent of the unit value to Ohio, which resulted in a valuation of $115,995,000 for TET's Ohio property.

{¶ 7} The commissioner presented no witnesses at the hearing before the BTA. The BTA rejected the rigid application of the statutory method set forth in R.C. 5727.11 and instead accepted TET' unit-appraisal method. The BTA reversed the commissioner's decision.

{¶ 8} In the companion case, No. 95-1515, Panhandle Eastern PipeLine Company ("Panhandle"), appellee, is an interstate pipeline company engaged in transporting, storing and selling natural gas obtained from producing areas in Texas, Oklahoma and Kansas. The Panhandle pipeline system extends 1,300 miles from the producing areas through Missouri, Illinois, Indiana and Ohio into Michigan.

{¶ 9} The Tax Commissioner, pursuant to R.C. 5727.11, assessed Panhandle at a true value of $6,959,617. Panhandle submitted the unit appraisal of Thomas Tegarden, who valued Panhandle's Ohio property at $5,974,000. Panhandle appealed to the BTA, which accepted Tegarden's appraisal and reversed the decision of the commissioner.

{¶ 10} It is from these decisions of the BTA that these appeals of right are taken.

———————————

*Jones, Day, Reavis & Pogue, Maryann B. Gall* and *Todd Swatsler,* for appellees.

*Betty D. Montgomery,* Attorney General, and *James C. Sauer*, Assistant Attorney General, for appellant.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 11} The issue before this court is whether natural-gas pipeline companies which are classified as public utilities can use a unit-appraisal method to determine the true value of their taxable personal property absent special or unusual circumstances, or whether R.C. 5727.11 requires the use of a cost-based method of valuation. For the reasons that follow, we find that R.C. 5727.11 does not preclude the use of a unit-appraisal method and, where true value is being contested, there need not be a finding of special or unusual circumstances. Accordingly, we affirm the decisions of the BTA.

{¶ 12} The commissioner argues that R.C. 5727.11 expressly requires use of a cost-based method of calculating the value of a public utility's taxable personal property and that an alternate unit-appraisal valuation method may not be used absent a showing of special or unusual circumstances.

{¶ 13} R.C. 5727.10 mandates that "the tax commissioner shall determine, in accordance with section 5727.11 of the Revised Code, the *true value in money* of all taxable property *** to be assessed by the commissioner. *** The commissioner *shall be guided* by the information contained in the report filed by the public utility *and such other evidence* and rules as will enable him to make these determinations." (Emphasis added.)

{¶ 14} R.C. 5727.11(B) further provides:

"[T]he true value of all taxable property *** to be assessed by the tax commissioner shall be determined by a method of

4

valuation using cost as capitalized on the public utility's books and records less composite annual allowances as prescribed by the commissioner. *If the commissioner finds that application of this method will not result in the determination of true value of the public utility's taxable property, he may use another method of valuation*."

(Emphasis added.)

{¶ 15} Although R.C. 5727.11 identifies the cost-based method of valuation as a means of assessing true value, the General Assembly has not restricted the commissioner's use of alternate valuation methods. In fact, in these statutes, the General Assembly specifically states that the commissioner may use "another method of valuation" and that he may consider "other evidence" to determine true value. Contrary to the commissioner's assertion, in deciding true value, the BTA need not adhere to the cost-based statutory method of valuation.

{¶ 16} The commissioner also argues that in order to apply alternate valuation methods, there must be a showing of "special or unusual circumstances." The commissioner's reference to "special or unusual circumstances" stems from language found in his "302" directive for determination of depreciation rates for general personal property. However, the words "special or unusual circumstances" do not appear in R.C. 5727.11 and are not a prerequisite for using an alternate valuation method where appellees are contesting true value rather than depreciation rates.

{¶ 17} The ultimate goal imposed by R.C. 5727.10 clearly is to determine the *true value* of the property taxed. *R.H. Macy Co., Inc. v. Schneider* (1964), 176 Ohio St. 94, 97, 26 O.O.2d 440, 441, 197 N.E.2d 807, 809. If the statutory method does not yield true value, then another method of valuation may be used, whether or not there are special or unusual circumstances. Although a statute may provide a prima facie estimate or presumption of value, where rigid application of the

statute would be inappropriate, the presumption of value must yield to other competent evidence reflecting true value. *Monsanto Co. v. Lindley* (1978), 56 Ohio St.2d 59, 61, 10 O.O.3d 113, 114, 381 N.E.2d 939, 941; *W.L. Harper Co. v. Peck* (1954), 161 Ohio St. 300, 53 O.O. 178, 118 N.E.2d 643.

{¶ 18} Turning to the facts of these cases, to challenge the statutory valuations of the commissioner, appellees submitted the unit appraisals of expert Tegarden as evidence of the properties' true value. The commissioner presented no evidence to refute Tegarden's underlying assumptions. The BTA accepted Tegarden's unit appraisals as being more accurate in determining true value than the statutory method imposed by the commissioner. In reaching this conclusion, the BTA weighed the evidence and found that the value presented by appellees was sufficient to overcome the prima facie presumption of true value accorded to the statutory method.

{¶ 19} The BTA is vested with the discretion to determine the weight to be given the evidence and the credibility of the witnesses. *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty.Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraph three of the syllabus. This court will not substitute its judgment for that of the BTA on factual issues (including a determination of true value) unless it affirmatively appears from the record that such decisions are unreasonable or unlawful. *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877.

{¶ 20} In this case, we find that the BTA's decisions are reasonable and lawful, and they are hereby affirmed.

*Decisions affirmed.*

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., DOUGLAS and COOK, JJ., dissent.

_____

6

**COOK, J., dissenting.**

{¶ 21} I respectfully dissent. Am. Sub. S.B. No. 156 enacted R.C. 5727.11 to prescribe the capitalized-cost formula for the Tax Commissioner's appraisal of the true value of tangible personal property held by a public utility. (143 Ohio Laws, Part I, 891, 909-910.) The statute allows the Tax Commissioner to use an alternative method of valuation only if the cost method does not result in true value. R.C. 5727.11(B). It remains the taxpayer's burden to demonstrate that application of the statutory formula does not result in true value. *Snider v. Limbach* (1989), 44 Ohio St.3d 200, 542 N.E.2d 647.

{¶ 22} Under the majority's interpretation of the applicable law, a taxpayer may successfully contest application of the statutory formula by demonstrating that another valuation method produces different results. By such reasoning, disparity in the accounting-method computations constitutes evidence that application of the statutory formula does not result in true value. The factfinder is then left to choose which accounting method is preferable in arriving at true value.

{¶ 23} By permitting taxpayers to attack the statutory formula as flawed, as opposed to arguing that specific factors make application of the statutory formula inappropriate for valuation of their property, the majority has rendered meaningless the General Assembly's choice of accounting methods to establish true value.

{¶ 24} The BTA's conclusion here has at its root a preconception that, as applied to interstate pipelines, the income-approach analysis is a better measure of true value than the statutory formula based on cost. The General Assembly could have chosen a unit method of appraisal based primarily on the income approach, but chose the current statutory formula as a better estimation of true value. It is not the place of the BTA or this court to override that determination.

{¶ 25} Because the BTA's rejection of the Tax Commissioner's determination is founded on the concept that a unit appraisal is a better measure of the true value of tangible personal property held by a public utility than the statutory

formula, its decision is unreasonable and unlawful. Further, inspection of the "special or unusual circumstances" alternatively relied on by the BTA reveals that it is the statutory valuation method and not a particular quirk in the application of that method to this case that the BTA finds inappropriate. Accordingly, I would reverse the decisions of the BTA and reinstate the commissioner's determination in case Nos. 95-1514 and 95-1515.

MOYER, C.J., and DOUGLAS, J., concur in the foregoing dissenting opinion.

———————————