[Cite as *WCI Steel, Inc. v. Testa,* 129 Ohio St.3d 256, 2011-Ohio-3280.]

WCI STEEL, INC., APPELLANT, *v.* TESTA, TAX COMMR., APPELLEE.

[Cite as *WCI Steel, Inc. v. Testa,* 129 Ohio St.3d 256, 2011-Ohio-3280.]

*Board of Tax Appeals — Specificity of notice of appeal.*

(No. 2010-1027 — Submitted March 23, 2011 — Decided July 7, 2011.)

APPEAL from the Board of Tax Appeals, No. 2005-V-1565.

_____

SYLLABUS OF THE COURT

1. The jurisdiction of the Board of Tax Appeals is invoked to review an assessment in which the tax commissioner has determined the value of personal property if the notice of appeal from that determination (1) states the appellant's objection to the commissioner's actions in valuing the property and (2) identifies the treatment that the commissioner should have applied. (*Abex Corp. v. Kosydar* (1973), 35 Ohio St.2d 13, 17, 64 O.O.2d 8, 298 N.E.2d 584, followed.)

2. In an appeal from an assessment in which the tax commissioner has determined the value of personal property, the Board of Tax Appeals is statutorily authorized to receive evidence in addition to that considered by the tax commissioner, and that evidence may include different valuation approaches from those presented to the tax commissioner. (*Key Servs. Corp. v. Zaino* (2002), 95 Ohio St.3d 11, 16, 764 N.E.2d 1015, applied.)

3. The different approaches to the valuation of personal property set forth in Ohio Adm.Code 5703-3-10(B) are not "alternate valuation methods" as that term is used in *Ohio Bell Tel. Co. v. Levin*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212, and accordingly the notice of appeal need not specify that the appellant will present a different valuation approach to the

Board of Tax Appeals than it presented in the proceedings before the tax commissioner.

_____

**CUPP, J.**

{¶ 1} In this personal-property-tax case, WCI Steel, Inc. ("WCI") appeals from a decision of the Board of Tax Appeals ("BTA"), which dismissed WCI's appeal on the authority of *Ohio Bell Tel. Co. v. Levin*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212. The BTA held that when judged under the standards articulated in *Ohio Bell*, WCI's notice of appeal to the BTA failed to specify any error and thereby failed to vest jurisdiction in the BTA to consider the appeal.

{¶ 2} On appeal, WCI argues that the BTA misconstrued *Ohio Bell*. WCI argues that it sufficiently specified error and that it was entitled to present, for the first time at the BTA hearing, an appraisal prepared by AccuVal Associates, Inc. as part of its claim for reduced valuation of its manufacturing machinery and equipment. We agree.

{¶ 3} First, we follow our precedents holding that a notice of appeal from an assessment in which the tax commissioner has determined the value of personal property invokes the jurisdiction of the BTA to review that determination if the notice (1) states the appellant's objection to the commissioner's actions in valuing the property and (2) identifies the treatment that the commissioner should have applied.

{¶ 4} Moreover, the BTA's jurisdiction in the appeal permitted it to consider the appraisal report and testimony that WCI presented for the first time at the BTA hearing. Our precedents establish that the BTA is statutorily authorized to receive evidence in addition to that considered by the tax commissioner, and we hold that such evidence may include different valuation approaches from those presented to the tax commissioner.

{¶ 5} In this regard, we hold that our decision in *Ohio Bell* is inapposite. The different approaches to the valuation of personal property set forth in Ohio Adm.Code 5703-3-10(B) are not "alternate valuation methods" as that term is used in *Ohio Bell*, and accordingly, the notice of appeal need not specify that the appellant will present a different valuation approach to the Board of Tax Appeals than it presented in the proceedings before the tax commissioner.

{¶ 6} Because the BTA applied *Ohio Bell* to a situation in which it should not have been applied, we reverse and remand with the instruction that the BTA decide this case on the merits.

### Factual Background

{¶ 7} WCI Steel, Inc. is a steelmaker in northeast Ohio. For tax year 2001, WCI reported that its manufacturing machinery and equipment ("M&E") had a value (in accordance with the tax commissioner's prescribed valuation method) of $84 million. For tax year 2002, the reported value of the M&E was just under $90 million.

{¶ 8} Testimony at the BTA hearing indicated that 2001 was a terrible year financially for the steel industry generally and was WCI's worst financial year: WCI lost $100 million. In 2002, WCI lost $37 million. In September 2003, WCI filed for bankruptcy reorganization.

{¶ 9} In connection with its business troubles, WCI decided to seek a lower valuation of its business property—in particular, the M&E used in steel manufacturing. In May 2003, a WCI representative made a presentation to tax department representatives. WCI presented a study apparently predicated primarily on comparable sales, although the study did discuss obsolescence. According to the commissioner's agent, the study compared the valuation of WCI's assets per ton of production capacity with that of five other steel producers and recommended—based on the comparison—that a lower value be assigned to WCI's own M&E. The report recommended a total value of all WCI's property

at $35 million for 2003, with retrospective valuation adjustments for 2002 and 2001.

{¶ 10} In accordance with the study, WCI valued its M&E for tax year 2003 at just under $30 million. WCI filed applications for final assessment pursuant to R.C. 5711.26 to obtain similar lower valuation for 2001 and 2002. The tax commissioner ultimately rejected the study based primarily on the conclusion of the tax commissioner's agent that the sales were not comparable, because WCI was more of a special-job steelmaker than a general steelmaker.

{¶ 11} During the proceedings before the commissioner, WCI's claim for reduction of the value of M&E was reviewed and analyzed as a claim for an impairment of asset value—indeed, the audit remarks characterized WCI's claim as a claim for asset impairment. Correspondence filed on behalf of WCI during the proceedings before the commissioner acknowledged the commissioner's interest in whether WCI ought to recognize an impairment on its books for its M&E, given the reduced valuation it sought from the commissioner. An earlier audit by the accounting firm KPMG had indicated that accounting standards did not require WCI to record an impairment for fiscal year 2002.

{¶ 12} After WCI's bankruptcy filing, WCI commissioned an appraisal of its assets from Nationwide Consulting Company, Inc. As a result of that appraisal, WCI did record an impairment. The tax commissioner's agent reviewed a portion of that appraisal, and the tax commissioner's witness at the BTA hearing stated, "[W]e saw parts of it and then did not agree with the method." The tax agent apparently asked for, but was denied, access to a portion of the analysis supporting the claim of impairment. On the other hand, the commissioner's agent did note in an addendum to the audit that the Nationwide Consulting appraisal of "fair market value in continued use" did consider a combination of cost approach, market-comparison approach, and income

4

approach—with emphasis on the market-comparison approach "when sufficient data was available"—to arrive at a value of $83,316,000.

{¶ 13} Although the commissioner suggests that the Nationwide Consulting appraisal relied exclusively on a sales-comparison approach and that the appraisal found income and cost approaches inapplicable, the page that the commissioner cites appears to address the value of the realty, not the M&E.

### Procedural History

{¶ 14} The present case involves not one but three tax years: 2001, 2002, and 2003. WCI was a fiscal-year taxpayer: it listed its personal property value as of the last day of its preceding fiscal year, which is October 31, rather than as of December 31 of the preceding calendar year. See R.C. 5711.03 and 5711.101; Ohio Adm.Code 5703-3-04. Thus, WCI's personal property was valued as of October 31, 2000, for tax year 2001; as of October 31, 2001, for tax year 2002; and as of October 31, 2002, for tax year 2003. Procedurally, the 2001 and 2002 tax years were placed at issue when WCI filed an application for final assessment. For tax year 2003, WCI filed its return using a lower valuation.

{¶ 15} The commissioner denied the relief WCI sought for 2001, 2002, and 2003. In doing so, the commissioner issued final-assessment certificates pursuant to R.C. 5711.26 but did not formally articulate the grounds for his decision in a final determination. WCI appealed the final assessment to the BTA. In the second assignment of error in its notice of appeal to the BTA, WCI did the following:

{¶ 16} (1) identified the categories of personal property at issue,

{¶ 17} (2) reiterated that the value previously asserted by the taxpayer was correct,

{¶ 18} (3) stated that the commissioner's determination "reflects property being valued as a percentage of its original cost using the Tax Commissioner's

composite annual allowance procedure" and contended that the true value of its property did not exceed the values requested by WCI, and

{¶ 19} (4) cited the pertinent statutes and administrative rules.

{¶ 20} WCI presented testimony and exhibits at an evidentiary hearing before the BTA. Most prominently, WCI presented the appraisal prepared by AccuVal Associates, Inc., which the commissioner has characterized as primarily a "replacement cost new" study.

{¶ 21} The AccuVal appraisal expressed an opinion of the value of WCI's M&E for 2003, 2002, and 2001 by determining its replacement cost and then making adjustments to that figure. First, AccuVal computed and subtracted depreciation by both physical deterioration and functional obsolescence. Second, AccuVal subtracted a large amount for economic obsolescence based on a computation of business-enterprise value. Third, AccuVal made an adjustment derived from a sales-comparison approach and thereby arrived at its estimate of true value. The primary focus was the 2003 tax year (value as of October 31, 2002), and the study then trended backward to determine values for the previous two years.

{¶ 22} After this court issued its decision in *Ohio Bell*, the BTA solicited briefs from the parties on the issue whether the decision affected the BTA's jurisdiction in the present case. Ultimately, the BTA determined that WCI's appeal must be dismissed on the authority of *Ohio Bell* because its notice of appeal failed to specify error. WCI timely appealed to this court. We now reverse.

## Analysis

{¶ 23} Because the "law of Ohio requires that personal property used in business be taxed at its true value," and because "it is impractical for the Department of Taxation to personally value all such personal property in the state," we have held that it is reasonable and lawful for the commissioner to

6

develop a method of "depreciating the cost of the personal property in accordance with its useful life." *W.L. Harper Co. v. Peck* (1954), 161 Ohio St. 300, 303, 53 O.O. 178, 118 N.E.2d 643. The commissioner's method, known as the "302 computation," consists of industry-specific composite annual allowances by which categories of business assets are depreciated from cost, and this court has approved the 302 computation "as a practical, reasonable and lawful method and device to achieve uniform valuation of plant equipment in Ohio by prescribing annual depreciation rates in lieu of book depreciation for Ohio personal property tax purposes." *PPG Industries, Inc. v Kosydar* (1981), 65 Ohio St.2d 80, 83, 19 O.O.3d 268, 417 N.E.2d 1385; see Ohio Adm.Code 5703-3-11 (prescribing use of the 302 computation in valuing personal property used in business).

{¶ 24} WCI sought a drastic reduction in the value of its M&E for tax years 2001, 2002, and 2003 from the value determined under the 302 computation. Before the tax commissioner, WCI placed primary reliance on a study of sales of comparable plants. Before the BTA, WCI presented the AccuVal appraisal. But the BTA dismissed WCI's appeal on the authority of *Ohio Bell Tel. Co. v. Levin*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212.

### *The BTA misread the holding of Ohio Bell*

{¶ 25} When a notice of appeal fails to set forth *any* error with the required specificity, an appeal may properly be dismissed—the action that the BTA took in the present case.[1] *Brown v. Levin*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35, ¶ 17. Alternatively, if the notice does specify one or more errors, the BTA may be called upon to rule that *a particular claim was not among*

---

1. The BTA's decision noted that two assignments of error in the notice of appeal had been abandoned, and it therefore did not consider the sufficiency of those assignments. *WCI Steel, Inc. v. Wilkins* (May 18, 2010), BTA No. 2005-V-1565, at 5. The BTA then proceeded to dismiss the appeal on the grounds that the remaining assignments of error were "so broad and vague as to be insufficient to invoke [the] board's jurisdiction." Id. at 6.

*those errors specified* and therefore lies outside the BTA's jurisdiction. Id. *Ohio Bell*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212, exemplifies the latter principle: the court held that the notice of appeal did not permit the introduction of a newly commissioned "unit appraisal" at the BTA.[2] But in the present case, the BTA relied on *Ohio Bell* to hold that the notice of appeal in this case failed to specify any error at all. That is mistaken.

{¶ 26} In *Ohio Bell*, the notice of appeal contained two claims of error that were pertinent to the court's analysis. First, the notice stated that the commissioner's determination "overstates both costs and service lives" of Ohio Bell's property; second, the notice stated that the assessment "utilizes a method that does not reasonably reflect true value." Id. at ¶ 20. The court considered whether either of these assertions conferred jurisdiction on the BTA to grant Ohio Bell relief *based on a unit appraisal*, given that Ohio Bell had not presented such an appraisal below but had presented only a valuation study that called for different cost figures and depreciation rates. Id. at ¶ 6.

{¶ 27} As for the statement that the commissioner "overstates costs and service lives," that phrase referred to the type of valuation study Ohio Bell had previously presented to the commissioner, and it did not relate to a unit appraisal. We next considered whether the assertion that the assessment "utilizes a method that does not reasonably reflect true value" extended jurisdiction to encompass a unit appraisal. We decided that it did not, because, while it purported to open the door to an alternative method, it "did not *narrow* the issues in this case in any way." (Emphasis sic.) Id. at ¶ 27. In this context, the court observed that "[s]uch a 'specification' is so broad that it specifies nothing at all." Id. But because we

---

2. Because the taxpayer in *Ohio Bell* had abandoned the use of its study of costs and service lives in favor of exclusive reliance on a unit appraisal, the court did not remand but instead ordered that the commissioner's determination be reinstated. *Ohio Bell*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212, at ¶ 34. Significantly, there was no dismissal of the BTA appeal in *Ohio Bell*, because there was no holding that the notice of appeal completely failed to specify any error at all.

did not address whether the notice of appeal failed to specify any error, that statement is obiter dictum.

{¶ 28} Moreover, reading *Ohio Bell* as foreclosing the jurisdiction of the BTA in this case contravenes the principles we have applied in other cases. We have held that a notice of appeal is sufficient to give notice of a particular error when it has "specified the commissioner's action that it questioned, cited the statute under which it objected, and asserted the treatment that it believed the commissioner should have applied." *Gen. Motors Corp. v. Wilkins*, 102 Ohio St.3d 33, 2004-Ohio-1869, 806 N.E.2d 517, ¶ 75, citing *Goodyear Tire & Rubber Co. v. Limbach* (1991), 61 Ohio St.3d 381, 383, 575 N.E.2d 146, citing *Abex Corp. v. Kosydar* (1973), 35 Ohio St.2d 13, 64 O.O.2d 8, 298 N.E.2d 584. *Abex Corp.* is particularly significant in this regard because it involved a decision by the BTA to dismiss a challenge to the valuation of personal property. Like the notice of appeal in *Abex Corp.*, WCI's second assignment of error meets the criteria by identifying the property, identifying the commissioner's action that it did not agree with, and identifying the treatment that the commissioner should have accorded.

{¶ 29} Therefore, consistent with *Abex Corp.*, 35 Ohio St.2d at 17, 64 O.O.2d 8, 298 N.E.2d 584, we hold that the jurisdiction of the BTA is invoked to review an assessment in which the tax commissioner has determined the value of personal property if the notice of appeal from that determination (1) states the appellant's objection to the commissioner's actions in valuing the property and (2) identifies the treatment that the commissioner should have applied. Because WCI's notice of appeal complied with these criteria, it invoked the BTA's jurisdiction.

{¶ 30} For all these reasons, the BTA erred by reading *Ohio Bell* as establishing that the notice of appeal in the present case fails to invoke any jurisdiction in the BTA. Indeed, we left no doubt of the narrow compass of our

holding when we stated that the "jurisdictional issue * * * stems from Ohio Bell's failure to present a case based on a unit appraisal to the commissioner, not from an unfortunate choice of words [in the notice of appeal]."  124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212, at ¶ 32.  The holding of *Ohio Bell* does not, therefore, dictate that a notice of appeal must set forth valuation theories with particularity.  Instead, the case merely prevents the presentation of an "alternate valuation method" that has not previously been presented to the tax commissioner.

> *By explicitly challenging the commissioner's valuation, a notice of appeal*
> *preserves the claim for reduced value and allows new evidence at the BTA*

{¶ 31} Determining that *Ohio Bell* does not support the BTA's dismissal of this case does not end our inquiry.  That is so because the BTA's error is jurisdictional in nature, and we must determine whether the BTA will have jurisdiction to entertain WCI's claim for reduced value on remand.[3]

{¶ 32} Even if a notice of appeal does specify one or more errors, the BTA may be called upon to rule that *a particular claim was not among those errors specified* and therefore lies outside the BTA's jurisdiction.  *Brown*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35, at ¶ 17.  As noted, our decision in *Ohio Bell* exemplifies that principle:  the court held that the notice of appeal did not permit the introduction of a newly commissioned "unit appraisal" at the BTA.  *Ohio Bell*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212, at ¶ 32-33.

---

3. Ordinarily, our jurisdiction to consider a claim that the BTA has erred is confined to specifications of error advanced either in a notice of appeal or in a cross-appeal.  See *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, 118 Ohio St.3d 330, 2008-Ohio-2454, 889 N.E.2d 103, ¶ 13-15; *Northeast Ohio Psych. Inst. v. Levin*, 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188, ¶ 23.  But when, as in the present case, an issue concerns the jurisdiction of the BTA and thereby, derivatively, our own jurisdiction on appeal, we may consider the issue without regard to the specification requirement of R.C. 5717.04.  See *Brown*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35, at ¶ 23, fn. 4.

{¶ 33} In the present case, the tax commissioner does not confine himself to defending the BTA's determination that WCI's notice failed to specify any error at all; the commissioner also contends that in this case, "just like in *Ohio Bell*, the language used by WCI in its notice of appeal to the BTA provides no notice to the Commissioner or the BTA of the particular valuation methodology(ies), analysis, assumptions, and evidence that WCI would present at the BTA." We therefore consider whether WCI's notice of appeal encompassed the AccuVal appraisal that WCI presented for the first time at the BTA.

{¶ 34} For two reasons, we hold that the BTA did possess jurisdiction to consider the AccuVal appraisal. First, the commissioner's argument cannot be reconciled with the statutes and the case law concerning the BTA's authority to hear evidence. R.C. 5717.02 specifically provides that "upon the application of any interested party the board shall order the hearing of additional evidence, and it may make such investigation concerning the appeal as it considers proper." The proposition that the notice of appeal must specify the nature of the evidence that the appellant will present at the BTA hearing cannot be reconciled with the specific mandate that "additional evidence" be taken on application of a party.

{¶ 35} Moreover, we have held that the "BTA hearing is *de novo*" and that the board is "statutorily authorized to conduct full administrative appeals in which the parties are entitled to produce evidence in addition to that considered by the Tax Commissioner." *Key Servs. Corp. v. Zaino* (2002), 95 Ohio St.3d 11, 16, 764 N.E.2d 1015, citing *Higbee Co. v. Evatt* (1942), 140 Ohio St. 325, 332, 23 O.O. 543, 43 N.E.2d 273; *Bloch v. Glander* (1949), 151 Ohio St. 381, 387, 39 O.O. 216, 86 N.E.2d 318. Imposing the jurisdictional prerequisite of specifying evidence would severely limit if not overrule our precedent concerning the scope of the BTA's authority in this regard—indeed, in *Ohio Bell* itself, we expressly acknowledged that a party "need not specify the evidence on which it intends to

rely [at the BTA]." *Ohio Bell*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212, at ¶ 30.

{¶ 36} Second, our decisions have not judged the sufficiency of assignments of error in a notice of appeal merely by their form of words. Instead, the words of the notice of appeal must be read in the context of the particular case in which those words are used. An assertion in a notice of appeal should therefore be read in light of the objections and evidence that were presented to the commissioner, with the result that a taxpayer's explicit objection to the commissioner's valuation of personal property will usually suffice to permit the taxpayer to preserve its valuation challenge and present new evidence to the BTA.

{¶ 37} One of the most dramatic illustrations of the importance of context is *Brown*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35. In *Brown*, the notice of appeal stated that the appeal was "being taken because the assessment is not supported by a proper application of Ohio Revised Code § 5747.02 and other applicable laws." Id. at ¶ 5. The "claim of error might indeed have been raised in any *income tax* case in Ohio." (Emphasis sic.) Id. at ¶ 22. (R.C. 5747.02 imposes the income tax.) Thus, the statement "arguably specifies no error at all." Id.

{¶ 38} But we did not hold that the BTA should have dismissed the appeal. Instead, we looked at the context as infusing the notice of appeal with a particular meaning: because the commissioner's determination relied on the BTA's decision in *Knust v. Wilkins* (Oct. 14, 2005), BTA No. 2004-M-533, 2005 WL 2699284, affirmed, 111 Ohio St.3d 331, 2006-Ohio-5791, 856 N.E.2d 243, and because the *Knust* appeal was pending before this court at the time the tax commissioner issued his final determination, we held: "[T]he BTA could have construed the Browns' notice of appeal as a request that if this court reversed the BTA's decision in *Knust*, the Browns should enjoy the benefit of that legal ruling. Indeed, to construe the notice of appeal in that way would comport with the fact that this case is one of a large number of cases that were pending before the BTA

in anticipation of our decision in the *Knust* appeal." *Brown* at ¶ 14. Our ultimate disposition in *Brown* reflects the reading of the notice of appeal in context: we did not find that the BTA lacked jurisdiction, but instead affirmed the BTA's summary affirmance of the commissioner's determination based on the court's decision in *Knust*.

{¶ 39} Additionally, reading the notice of appeal in context comports with the basic purpose of the specification requirement: notice. See *Gen. Mills, Inc. v. Limbach* (1992), 63 Ohio St.3d 273, 275, 586 N.E.2d 1074 ("R.C. 5717.02 merely requires that the error be presented with sufficient specificity to apprise the BTA of the nature and extent of the alleged error"), citing *Abex Corp.*, 35 Ohio St.2d 13, 64 O.O.2d 8, 298 N.E.2d 584; *Castle Aviation, Inc. v. Wilkins*, 109 Ohio St.3d 290, 2006-Ohio-2420, 847 N.E.2d 420, ¶ 39 ("The purpose of specifying error at the BTA, be the error constitutional or nonconstitutional, is to put the Tax Commissioner on notice as to the issues that will be contested"). Simply put, reiterating a claim raised before the commissioner, even without exposition, gives adequate notice that the taxpayer will reassert that claim to the BTA.

{¶ 40} In the present case, WCI's notice invokes the BTA's jurisdiction to consider a claim for reduced value, at least to the extent of the evidence, arguments, and considerations that formed a part of the tax commissioner's review of that claim.

*The AccuVal appraisal presented at the BTA did not exceed the scope of the claim for reduced value specified in the notice of appeal*

{¶ 41} The commissioner emphasizes that WCI presented a comparable-sales study to the commissioner and placed primary reliance on that study, and distinguishes between a comparable-sales approach and a replacement-cost approach, which predominated in the AccuVal appraisal that WCI presented at the BTA. Citing *Ohio Bell*, the commissioner analogizes this distinction to the "alternate valuation methods" at issue in *Ohio Bell*. Under this theory, the

AccuVal appraisal, like the unit appraisal in *Ohio Bell*, lay outside the jurisdiction created by the notice of appeal.

{¶ 42} The commissioner's theory is mistaken for two reasons. First, unlike the utility tax at issue in *Ohio Bell*, the general personal property tax is subject to administrative rules that address the valuation of personal property. Ohio Adm.Code 5703-3-11 generally calls for the use of the commissioner's 302 computation and establishes the prima facie validity of that method.

{¶ 43} When a taxpayer challenges the valuation in accordance with the 302 computation, Ohio Adm.Code 5703-3-10(B) provides that the 302 valuation may be "rebutted by probative evidence of higher or lower valuation" and then enumerates several types of evidence:  an arm's-length sale of the assets, a comparable-sales study, or more accurate annual allowances for depreciation and obsolescence.  Contrary to the commissioner's argument, this language makes clear that a comparable-sales study and a cost-less-depreciation study do not constitute different claims for relief, but merely different types of "probative evidence of higher or lower valuation" by which the prima facie validity of the 302 computation may be rebutted.  Ohio Adm.Code 5703-3-10(B).  Because an appellant at the BTA "need not specify the evidence on which it intends to rely," *Ohio Bell*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212, at ¶ 30, it follows that WCI did not need to specify the approaches to valuing property that it intended to rely on before the BTA.

{¶ 44} Second, the concept of an "alternate valuation method" found in *Ohio Bell* is specific to the utility tax and usually does not apply to the general personal property tax.  *Ohio Bell* was itself a utility-tax case in which the tax commissioner valued Ohio Bell's property by applying "composite annual allowances" for depreciation and obsolescence to the historical cost of the utility's operating assets.  See R.C. 5727.11.  Before the commissioner, Ohio Bell began by offering a valuation to reduce costs and accelerate depreciation, but for the first

time at the BTA, Ohio Bell resorted to a "unit appraisal." The term "alternate valuation method" is derived from a previous utility-tax case and refers to the distinction between these two approaches to valuing the operating assets of a utility. *Ohio Bell* at ¶ 23, citing *Texas E. Transm. Corp. v. Tracy* (1997), 78 Ohio St.3d 83, 86-87, 676 N.E.2d 523.

{¶ 45} Unit-appraisal valuation is different—in *Ohio Bell,* we referred to its "fundamental dissimilarity" to the cost-less-depreciation approach—because a unit appraisal is an " 'appraisal of an integrated property as a whole, without reference to the value of its component parts.' " *Ohio Bell Tel. Co. v. Wilkins* (Aug. 31, 2007), BTA No. 2005-K-202, at 12, quoting the unit appraisal presented to the BTA, reversed on other grounds, *Ohio Bell*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212; accord *Stone v. Limbach* (June 30, 1988), BTA No. 85-C-931, at 23 (Ohio formerly taxed utility property under "unit" valuation, meaning that "[a]ll taxable property of a public utility is valued as one 'piece' or 'unit' of property," with the result that the property is "valued as a 'whole' instead of on an 'item by item' basis"). And unit-appraisal valuation plays a role in the history of utility taxation that is different from the general personal property tax.

{¶ 46} Namely, the unit appraisal became an alternate valuation method in the utility tax after the enactment of R.C. 5727.11 in 1989. Am.Sub.S.B. No. 156, 143 Ohio Laws, Part I, 891, 909-911. Under the public utility personal property tax *as amended*, the statute requires the commissioner to determine the value of personal property by "using cost as capitalized on the public utility's books and records less composite annual allowances as prescribed by the commissioner." R.C. 5727.11(A), formerly (B). Before that amendment, the valuation of utility property by means of a "unit appraisal" was a widely acknowledged and accepted approach. See *Texas E. Transm. Corp.*, 78 Ohio St.3d at 83, 676 N.E.2d 523 ("Prior to 1990, TET's property was assessed by 'unit appraisal,' " pursuant to which "the value of the entire operating system is determined and then an amount

is allocated to those components located within the various states").[4] Because of this background, we characterized the unit appraisal offered in *Texas Eastern* as an "alternate valuation method" from the statutory method and held that such an appraisal could be offered as a basis for departing from the cost-less-deprecation approach without any showing of special and unusual circumstances. Id. at 86. Next, in *Ohio Bell,* we echoed the discussion in *Texas E. Transm. Corp.* of the unit appraisal as an "alternate valuation method" and emphasized the "fundamental dissimilarity between the valuation theory presented to the commissioner (which was focused on revising the cost and depreciation variables) and the [unit appraisal] presented to the BTA (which was focused on an expert appraiser's professional opinion of the *market* value of Ohio Bell's operating properties)." (Emphasis sic.) *Ohio Bell*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212, at ¶ 23.

{¶ 47} By contrast with *Ohio Bell*, the present case presents no such "fundamental dissimilarity" because the AccuVal appraisal that WCI presented at the BTA integrates a mix of approaches into a replacement-cost study, and such an appraisal does not qualify as an "alternate valuation method" from what was considered by the tax commissioner. Moreover, the concept of alternate valuation method simply does not apply outside the utility-tax context. For these reasons, *Ohio Bell* is not apposite, and the BTA had jurisdiction to consider the AccuVal appraisal.

*WCI was not obligated to present the AccuVal appraisal to the commissioner*

*in order to be permitted to present it to the BTA*

---

4. See *Condee v. Lindley* (Nov. 30, 1983), BTA No. 81-F-652, at 13-14, affirmed, 12 Ohio St.3d 90, 12 OBR 79, 465 N.E.2d 450; *Stone v. Limbach* (June 30, 1988), BTA No. 85-C-931, at 23; *McCormack v. Limbach* (Feb. 3, 1988), BTA Nos. 85-A-969, 85-A-984, 85-A-1016, and 85-A-1023, at 10, 1988 WL 161837, *4-5, affirmed sub nom. *Snider v. Limbach* (1989), 44 Ohio St.3d 200, 542 N.E.2d 647.

**{¶ 48}** The commissioner also argues that the BTA lacked jurisdiction because WCI did not present the AccuVal appraisal to the commissioner first. This argument relies on the asserted rule that "a failure to *present* an issue to the commissioner precludes the BTA from taking jurisdiction over that issue—even if the issue is *specified* in the notice of appeal." (Emphasis sic.) *Ohio Bell*, 124 Ohio St.3d 211, 2009-Ohio-6189, 921 N.E.2d 212, at ¶ 33, citing *CNG Dev. Co. v. Limbach* (1992), 63 Ohio St.3d 28, 32, 584 N.E.2d 1180, and *DeWeese v. Zaino*, 100 Ohio St.3d 324, 2003-Ohio-6502, 800 N.E.2d 1, ¶ 19–22.

**{¶ 49}** The commissioner cites no specific statutory authority to support his second and third propositions of law. That is odd because the language of the statutes is almost certainly relevant to whether a taxpayer is or is not obligated to set forth its objections and arguments before the commissioner. See *CNG*, 63 Ohio St.3d at 31, 584 N.E.2d 1180, quoting R.C. 5739.13 (sales-tax provision authorizing a challenge to the tax commissioner's assessment expressly required that the petition for reassessment " 'set[ ] forth with particularity the items of the assessment objected to, together with the reasons for such objections' "); *DeWeese*, 100 Ohio St.3d 324, 2003-Ohio-6502, 800 N.E.2d 1, at ¶ 10 (because R.C. 5711.31 requires a petition for reassessment in a property-tax case to "indicate the objections of the party assessed, but additional objections may be raised in writing if received prior to the date shown on the final determination by the commissioner," the "issues that the taxpayer wants reviewed must be presented to the Tax Commissioner in writing," and "the only issues before him for determination are those that have been presented in writing by the taxpayer").[5]

---

5. It is worth noting that the present case involves the issuance of final-assessment certificates by the tax commissioner pursuant to R.C. 5711.26 and does *not* involve a final determination of a petition for reassessment pursuant to R.C. 5711.31. That is potentially significant to the commissioner's argument because R.C. 5711.31 explicitly requires the taxpayer to "indicate the objections" to the assessment, while R.C. 5711.26 does not expressly create a duty to state objections.

**{¶ 50}** Despite the commissioner's lack of reference to a specific statute, for purposes of our analysis we will assume without deciding that the requirement that objections be raised before the commissioner applies to all three tax years at issue in this case. By asserting that requirement as he does in the present case, however, the commissioner pits it squarely against the settled principle (previously discussed) that new evidence may be presented at the BTA in support of a claim for reduced value.

**{¶ 51}** The preceding discussion establishes that the commissioner's argument must fail. Under Ohio Adm.Code 5703-3-10(B), the comparable-sales approach and the cost-less-depreciation approach are two evidentiary approaches, not different claims for relief.[6] Because the "BTA hearing is *de novo*" and the "parties are entitled to produce evidence [at the BTA] in addition to that considered by the Tax Commissioner," *Key Servs. Corp.*, 95 Ohio St.3d at 16, 764 N.E.2d 1015, the presentation of evidence using one approach to value before the commissioner does not bar the presentation of evidence to the BTA using another approach.

**{¶ 52}** Consistent with the reasoning of *Key Servs. Corp.*, we hold that in an appeal from an assessment in which the tax commissioner has determined the value of personal property, the BTA is statutorily authorized to receive evidence in addition to that considered by the tax commissioner and that evidence may

---

6. In this regard, the distinctions between various evidentiary approaches to valuation differ markedly from the distinctions between discrete legal claims at issue in the cases that the commissioner relies upon. See *Am. Fiber Sys., Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, 928 N.E.2d 695, ¶ 17-22 (collateral-estoppel theory constituted a claim or argument that had to be affirmatively specified in the objections to the commissioner's assessment); *CNG*, 63 Ohio St.3d at 32, 584 N.E.2d 1180 (where petition for reassessment stated two grounds for relief from assessment but made no reference to the exemption from sales and use tax for items used directly in the rendition of a utility service, the taxpayer could not assert the latter claim at the BTA); *DeWeese*, 100 Ohio St.3d 324, 2003-Ohio-6502, 800 N.E.2d 1 (where county auditors appealed to the BTA from the tax commissioner's final determination of a property-tax assessment and raised exemption issues in that appeal that were not the subject of the taxpayer's petition for reassessment, the court held that those issues were therefore jurisdictionally barred).

include valuation approaches different from those presented to the tax commissioner.

{¶ 53} As for the commissioner's citation of *Hatchadorian v. Lindley* (1986), 21 Ohio St.3d 66, 21 OBR 365, 488 N.E.2d 145, that case does state that the commissioner's findings are "presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." Id. at paragraph one of the syllabus. But the BTA's standard of review in an appeal from a determination of the tax commissioner is not before us, and we do not think it is relevant to the jurisdictional issue we do confront.

{¶ 54} The commissioner additionally claims that he possesses the exclusive power to value and assess property and argues on that basis that the BTA cannot consider an appraisal that was not first presented to the commissioner. Although our case law at one point acknowledged the commissioner's "exclusive power" concerning property valuation, it did so only in the context of the public utility property tax, see *Toledo Edison Co. v. Galvin* (1974), 38 Ohio St.2d 210, 212, 67 O.O.2d 230, 311 N.E.2d 897 (former public utility property-tax statutes reserved "exclusive power to value and assess public utility property to the Tax Commissioner"), cited by *Hatchadorian* at 71. *Hatchadorian* was a utility-tax case as well, and whatever continuing force that pronouncement may have is confined to the utility context.

## Conclusion

{¶ 55} For all the foregoing reasons, we distinguish our decision in *Ohio Bell* and hold that the different approaches to valuing personal property set forth in Ohio Adm.Code 5703-3-10(B) are not "alternate valuation methods" and accordingly that the notice of appeal need not specify that the appellant will present a different valuation approach to the BTA than it presented in the proceedings before the tax commissioner.

**{¶ 56}** The analysis of *Ohio Bell* is inapplicable to the situation of this case. The BTA acted unlawfully when it dismissed WCI's appeal for lack of jurisdiction. We therefore reverse and remand for a determination of WCI's appeal on the merits.

Decision reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and MCGEE BROWN, JJ., concur.

_____

Buckingham, Doolittle & Burroughs, L.L.P., David W. Hilkert, and Steven A. Dimengo, for appellant.

Michael DeWine, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee.

Eugene P. Whetzel, urging reversal for amicus curiae Ohio State Bar Association.

Linda S. Woggon, urging reversal for amicus curiae Ohio Chamber of Commerce.

_____